THOMAS J. DURSO, Plaintiff-Appellee, *v.* LYLE STUART, INC., *et al.,* Defendants-Appellants.

(No. 60721;

First District (4th Division)—October 22, 1975.

Richard C. Valentine and Michael Davis, both of Chicago, for appellants.

Leonard M. Ring, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Thomas J. Durso, filed his complaint for libel in the Circuit Court of Cook County on September 30, 1969, against Ovid Demaris, the author of a book entitled *Captive City*, and Lyle Stuart, Inc., the publisher of the book. On October 12, 1973, a jury awarded the plaintiff compensatory damages in the amount of $3000 and punitive damages in the amount of $10,000 against both defendants. A special interrogatory inquiring whether the defendants were actuated by actual malice was answered in the affirmative by the jury.

The issue for review is whether there was clear and convincing evidence to support the jury verdict finding the defendants guilty of "actual malice."

*Captive City* purports to be an exposé of an alliance between organized crime and politics and business in the City of Chicago. One of the figures in the 366-page book which is packed with names is Thomas

N. Durso, a former Chicago policeman, who was convicted of murdering one "Lover" Moschiano, a syndicate narcotics operator, who had been revealed as a police informant. In the chapter immediately following the vivid portrayal of this murder, the author focused his attention on Thomas Keane, an alderman in the City of Chicago. In the last paragraph of this one-and-a-half page subchapter on Keane, Demaris concluded:

> "In the immediate excitement following Gross' murder, Keane was assigned a police bodyguard, identified in a news story as Thomas Durso. This was the same Durso who was linked to the Narcotics Branch of the Syndicate in 1964, and convicted for the brutal knife slaying of police informer Anthony 'Lover' Moschiano."

This statement is false. The Thomas Durso assigned as Keane's bodyguard was Thomas J. Durso. He was a Chicago policeman who was not in narcotics traffic, was not linked to the Syndicate and was not convicted of the murder of Moschiano.

The defendants admit there was an error, but assert that the author intended to insert the word "not" in the phrase in order to distinguish between the two men. Demaris stated at trial that the reason he included the name of Thomas Durso, bodyguard, was because he had the name and sought to name actual people to give the book a sense of reality.

Demaris further stated he did not know how the word "not" was omitted: "I assume the error, wherever it was made, was made between the manuscript and the galley; or I did it, I don't know." He testified that even though he proofread the manuscript seven or eight times and the galley proofs and page proofs two to three times each, he always read the word "not" into the sentence even though it was not there. The index prepared by the publisher did not distinguish between the two men.

Demaris testified he knew there were two men by the name of Thomas Durso because he was aware that Thomas N. Durso had come on the police force in 1955, but Thomas J. Durso had been assigned as a bodyguard to Alderman Keane in 1952. The only documentation or reference to Thomas J. Durso was a single story in the Chicago Tribune.

Lyle Stuart, Inc., the publisher of the book, had no knowledge of the truth or falsity of the statement regarding the plaintiff and did not perform any investigation of the statement. They relied on the investigation of the author and on the investigation of Prentice-Hall, another publisher which ultimately rejected the book after going so far as to set the type for printing. Several other publishers had also rejected the book.

There were three printings of the book, all in 1969, before the filing of the lawsuit, but books continued to be sold through 1972. A total of

17,200 copies of the hardback edition of *Captive City* were sold in the United States.

Thomas J. Durso was never contacted by anyone on behalf of Lyle Stuart or Ovid Demaris regarding the publication of his name in the book, and he never received an apology from anyone. Demaris testified he wanted an insert to be placed in the unsold books, but it was impossible.

In the paperback edition of the book published by Pocket Books, a subsidiary of Simon & Schuster, certain changes were made including the insertion of the word "not" in the paragraph in question.

Thomas J. Durso left the Chicago police force in 1963, and has been living in California since then. He returned to Chicago for a visit in 1969, and while at City Hall, he was teased about the reference in the book. His brother knew about the book and told him he was in it, and his nephew in California also saw it. He stated he was unaware of anyone else who had seen or read the book because he stayed away from downtown Chicago on his vacation.

■■ The defendants contend on appeal that the plaintiff did not prove through clear and convincing evidence that the publication was made with "actual malice" as required by the case of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L.Ed.2d 686, 706, 84 S.Ct. 710. In that case the rule was stated as follows:

> "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

It is well settled that mere negligence is not actionable under the *New York Times* requirements. *Garrison v. Louisiana* (1964), 379 U.S. 64, 13 L.Ed.2d 125, 85 S.Ct. 209; *Bloomfield v. Retail Credit Co.* (1973), 14 Ill.App.3d 158.

The defendants argue with respect to Demaris that the most shown by the evidence is that he intended to distinguish between the two men, but through a negligent error in drafting and/or proofreading, the crucial word "not" was omitted. They rely on the case of *Ocala Star-Banner Co. v. Damron* (1971), 401 U.S. 295, 28 L.Ed.2d 57, 91 S.Ct. 628, in which the defendant published an article in a small newspaper in rural Florida, charging that the plaintiff, a public official, had been charged with perjury in a Federal court. The story was false as to the plaintiff, but was substantially accurate as to his brother. The newspaper explained the error as a "mental aberration." The trial court entered judgment upon

a verdict for the plaintiff, but the Supreme Court reversed, based on the *New York Times* rule. Upon remand the court granted summary judgment for the defendant newspaper and the appellate court affirmed.

With regard to the publisher, Lyle Stuart, Inc. argues that it had no reasons to injure the plaintiff and there is nothing in the incorrect statement itself or in its source that makes it so inherently improbable that only a reckless publisher would have put it into circulation without further investigation. Reliance is placed in the case of *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 733, 20 L.Ed.2d 262, 267, 268, 88 S.Ct. 1323, where the Supreme Court reversed a State court holding that certain statements made by the defendant, a candidate, concerning a deputy sheriff were made with reckless disregard of whether they were true or not. The court stated:

> "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.
>
> \* \* \*
>
> \* \* \* Failure to investigate does not in itself establish bad faith."

The plaintiff responds that the trial court correctly instructed the jury with respect to the plaintiff's burden of proof and there was ample evidence to support its verdict.

■■ The court properly instructed the jury that the plaintiff had the burden of establishing by clear and convincing evidence that defendants were guilty of actual malice and that malice was "knowing falsity" or "recklessness." It was also instructed that a mere failure to exercise ordinary and reasonable care was not enough to constitute recklessness. In addition the court submitted to the jury, and the jury answered in the affirmative, the defendant's requested special interrogatory, which read: "Were the defendants actuated by actual malice in the reference to plaintiff?"

■■ Whether or not there was "actual malice" as required by the *New York Times* standard is a question of fact for the jury. (*St. Amant v. Thompson* (1968), 390 U.S. 727; *Dun & Bradstreet, Inc. v. Nicklaus* (8th Cir. (1965), 340 F.2d 882.) In order to prove "actual malice" the plaintiff need not show malice in the moral sense of hate, vindictiveness, or animosity, but proof of a wanton disregard of the rights of others is sufficient. *Bloomfield v. Retail Credit Co.* (1973), 14 Ill.App.3d 158.

The existence of actual malice may be inferred where a defamatory publication is made without the proper cause or excuse. *Lorillard v. Field*

*Enterprises, Inc.* (1965), 65 Ill.App.2d 65; *Van Norman v. Peoria Journal-Star, Inc.* (1961), 31 Ill.App.2d 314.

The evidence at trial showed Demaris had set out to write an exposé type book linking crime and politics in the City of Chicago. In such a book in which it was his intention to "name names" it is incumbent on an author to thoroughly check the facts to insure against harm to the reputations of innocent persons. In *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L.Ed.2d 1094, 87 S.Ct. 1975, the court found that a muckraking intent, the absence of "hot news," and an inadequate investigation were all significant factors in upholding the jury's award of compensatory and punitive damages.

In this case the defendant's only source of information with respect to the plaintiff was a single newspaper clipping, which indicated he had been assigned to guard Alderman Keane in February of 1952. Demaris had other information which indicated that Thomas Durso, convicted of murder, had joined the Chicago police force in 1955.

It is not clear, despite his testimony to the contrary, that Demaris was aware of these differences at the time he wrote the book, especially since he did not distinguish between the two by the use of the middle initial. The credibility of the witnesses is for the jury to determine and in this case there was evidence which put the credibility of Demaris in question. He testified he was not able to explain how the error took place, whether it was in the manuscript, the galleys, the page proofs, or in proofreading. However, he did not produce either the manuscript or the galley or page proofs in court. He stated he had not kept a copy of the manuscript, which is itself unbelievable, but his contract with Lyle Stuart, Inc., required him to retain a copy of the manuscript to protect against loss of the publisher's copy.

Demaris' credibility was also damaged when it was brought out at trial that his deposition indicated his manuscript failed to include the word "not" which is at variance with his trial testimony in which he stated he did not know where the error occurred.

The jury may also have found where there was an intention to write a book linking crime and politics, the unintentional inclusion of an erroneous fact which provides just such a link is inherently unbelievable.

From the evidence adduced the jury could have found the error was an intentional misrepresentation, or the statement was the result of ignorance based on reckless research techniques. The jury was not bound to believe the testimony of Demaris that the error was the result of mere negligence.

The evidence against Lyle Stuart, Inc., is equally damaging. It chose

to publish an exposé type book after it had been rejected by several other publishers. Prentice-Hall had rejected it after going so far as to set the type. Under these circumstances Lyle Stuart, Inc., chose to rely on an investigation done by Prentice-Hall and only requested that Demaris submit some of his source material for scrutiny. None of the data delivered dealt with the plaintiff.

■■ This is a different situation than that found in *St. Amant v. Thompson*, 390 U.S. 727, 20 L.Ed.2d 262, 88 S.Ct. 1323, where there was no compelling reason to believe the publication complained of might have been false. In that case the court stressed the importance of the jury's determination of good faith and that recklessness may be found where there are obvious reasons to doubt the accuracy of source materials:

> "The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." 390 U.S. 727, 732, 20 L.Ed.2d 262, 267-68.

■■■ Finally, at the end of 1969, both defendants knew the statement contained in the book was false, but did nothing to rectify the error. There was never any retraction or apology made to the plaintiff, and Demaris' only explanation was his bare assertion that he wanted to print a retraction but that it was impossible to do so. Even though hardback books continued to be sold through 1972, it was not until the publishing of the paperback edition that any correction was made. It has been held that any subsequent publishing of a libel with knowledge of its falsity is proof of malice. *Morgan v. Dun & Bradstreet, Inc.* (5th Cir. 1970), 421 F.2d 1241; *Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.* (5th Cir. 1970), 430 F.2d 38.

For the aforesaid reasons, the judgments against both defendants are affirmed.

Affirmed.

ADESKO and BURMAN, JJ., concur.