GLEN S. GUTHRIE, Plaintiff-Appellant, *v.* ROY H. ANNABEL, d/b/a Boone County Courier, Defendant-Appellee.

Second District   No. 76-280

Opinion filed July 27, 1977.

Robert G. Coplan, of Connolly, Oliver, Goddard, Coplan & Close, of Rockford, for appellant.

Roy H. Annabel, of Belvidere, for appellee, *pro se.*

Mr. JUSTICE NASH delivered the opinion of the court:

This appeal is taken from a judgment of the Circuit Court of Boone County in an action for libel. After a bench trial, the court found in favor of defendant, Roy Annabel, and against plaintiff, Glen Guthrie.

The material alleged to be libelous was contained in a letter written by defendant to former Governor Daniel Walker on June 24, 1974, and published on June 27 in the Boone County Courier, a weekly newspaper of general circulation in Boone County, Illinois. Defendant was owner and publisher of the newspaper at that time.

The letter, describing plaintiff's conduct as illegal, despicable, reprehensible, grand theft, pilfering and idiotic, was precipitated by disputes between the parties over the sale of the Boone County Courier by plaintiff, who was its former publisher, to defendant, Annabel. They had entered into a written contract for such sale in April 1974, the terms of which provided that all accounts receivable deposited by a certain day would belong to plaintiff as seller and the remainder would be the property of defendant as buyer. It appears that plaintiff did collect one such account in the amount of $47.25 after the cutoff date. Defendant then withheld a $15,000 payment due on the purchase price on May 18, 1974, because of this alleged breach of contract by plaintiff and because defendant had also not received certain business papers and insurance policies to which he believed he was entitled under the contract.

On May 24, 1974, plaintiff obtained a cognovit judgment against defendant for $18,300 and on June 13 he, allegedly accompanied by his wife, three of their children and John Bond, an employee of the Illinois Department of Agriculture, went to the newspaper office in defendant's absence and "repossessed" the business property secured under a security agreement previously executed by defendant. In addition to removing machines, furniture and equipment, plaintiff also removed several unmarked boxes containing personal property belonging to defendant and his wife and not related to the business which defendant stated had a value exceeding $150 as is required for a grand theft.

Defendant sought to have plaintiff arrested for the entry and removal of property. He discussed the repossession with the sheriff of Boone County

who advised him that no papers had been placed in his hands directing any removal of property. Defendant consulted with his own attorney who advised him that the purported repossession was not legal in a civil sense but who did not discuss with defendant any criminal connotations of such removal. Defendant also talked to a representative of the State's Attorney of Boone County who apparently declined the issuance of criminal warrants because the matter was already before the court on the civil cognovit judgment matter and should be resolved there.

At this escalating stage of their controversy the parties entered into negotiations which concluded on June 21 with the return to defendant of all property seized by plaintiff, the payment to plaintiff of $8500, the vacation of the cognovit judgment against defendant and the execution of mutual releases between the parties.

The letter to the governor and its publication in defendant's newspaper followed.

The single issue argued by the parties and presented for our review on this appeal is whether the trial court erred in holding that defendant Annabel "neither knew that the published material in question was false nor did he publish the material with reckless disregard of whether it was false or not * * *."

■■ At the time of the activities earlier described, plaintiff, Glen Guthrie, was chairman of the central committee of his political party and was the nominee of his party for the office of sheriff in a forthcoming general election. He concedes he was a public figure within the context of *New York Times v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, and thereby had the burden of proving that the statements concerning him were published by defendant with actual malice as defined therein. *New York Times* characterized actual malice as the publication of libelous matter "with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) The actual malice standard was extended by the court to public figures in *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975. Actual malice, in this context, must be established by clear and convincing evidence. *Durso v. Lyle Stuart, Inc.* (1975), 33 Ill. App. 3d 300, 337 N.E.2d 443.

Defendant, Annabel, testified that his motive in publishing the letter was the dissemination of information to the public about the activities of a man who was a candidate for public office and that he did believe that plaintiff's conduct in the repossession was illegal and understood that the taking of property valued over $150 constituted grand theft as suggested in his letter.

Plaintiff contends that defendant should have known the description of

plaintiff's conduct as grand theft and pilfering and general characterization as illegal was false but, in any event, he published the statements with a reckless disregard of whether they were false or not.

After arguments, the trial judge stated he would take the matter under advisement for decision after considering the briefs to be submitted by the parties, but that he had an impression relating to the case that he believed should be expressed then, as follows:

" * * * I feel rather strongly that this is an indication, or an exemplification of a misuse of a newspaper. I think that is reprehensible. But, that is not the question that is before me. I will decide the legal question that is before me, because the legal question is a very, very narrow one, and the misuse of a newspaper is not necessarily libel.

And I think it is only fair, that if there is a judgment against the plaintiff and for the defendant, that that is not tantamount to an approval of conduct. It is merely an interpretation of a very narrow, legal proposition, and an extension—if that is the case, it may not be—of the protection of the First Amendment to the news media. And I think it has been abused in this case, because I think you did a very reprehensible act. I think you attacked a man under the guise of a public spirited editor for a very personal reason."

We agree that the trial judge accurately characterized defendant's conduct and that the court also correctly concluded that plaintiff had not met his burden of showing by clear and convincing evidence that Annabel, in fact, entertained serious doubts as to the truth or falsity of his charges against Guthrie.

*Tunnell v. Edwardsville Intelligencer, Inc.* (1969), 43 Ill. 2d 239, 252 N.E.2d 538, *cert. denied* (1970), 397 U.S. 1021, 25 L. Ed. 2d 530, 90 S. Ct. 1259, is analogous. There the published statement sued upon charged that plaintiff, a city attorney, "was working to break the law." Defendant contended that the phrase was intended to convey the message that plaintiff would alter or change the law and not intended to suggest he would violate the law. In holding that actual malice as required by *New York Times* and *St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323, was not established, the court stated:

"The statement here in question was made during a political campaign by a writer who opposed the re-election of the incumbent mayor. It was intended to disparage the plaintiff, and thereby to reflect adversely upon the mayor who had appointed him to public office. Such an intent, however, is distinguishable from that which is now necessary to support a finding of 'actual malice.' We are compelled to hold that the statement bears sufficient relationship to the facts to negate the conclusion that its

author intended to disseminate information which he knew to be false, or about the truth of which he entertained serious doubts. We are therefore required to reverse the judgment of the appellate court." 43 Ill. 2d 239, 247, 252 N.E.2d 538, 542-43.

Similarly, in the instant case the trial court concluded that defendant did believe the taking of his nonbusiness personal property by plaintiff was theft and, while defendant had discussed the matter with the State's Attorney, the sheriff and his private counsel, he had been advised only that plaintiff's conduct was illegal in a civil sense, that the sheriff had no repossession "papers" and that criminal complaints would not be issued while a civil suit was pending. There was no evidence that he was advised by any of those persons that the conduct was not criminal and there is at least a colorable argument that plaintiff's repossession went beyond the authority of the security agreement and plaintiff obtained unauthorized control over some property belonging to defendant.

■■ It was for the trier of fact to determine whether there existed clear and convincing evidence of "actual malice" on the part of defendant. (*Fopay v. Noveroske* (1975), 31 Ill. App. 3d 182, 334 N.E.2d 79.) Under the circumstances in this case it cannot fairly be said that defendant published the libelous material describing plaintiff's conduct as criminally illegal with serious doubts as to its truth or with a reckless disregard as to its truth or falsity. The published material thereby retains the protection afforded it by the Constitution. The trial judge who saw and heard the witnesses who testified found that plaintiff's burden had not been met. We find that decision is not clearly against the manifest weight of the evidence and it will not be disturbed on appeal.

Judgment affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.