CATHERINE COOK ANAGNOST, Plaintiff-Appellant, *v.* THE CHICAGO BAR ASSOCIATION, Defendant-Appellee.

First District (2nd Division) No. 79-657

Opinion filed March 25, 1980.

Anagnost & Anagnost, of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon and McCarthy & Levine, both of Chicago (Lenard C. Swanson, Ruth E. Van Demark, and John F. McCarthy, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Catherine Cook Anagnost, brought this libel action against defendant, the Chicago Bar Association, seeking injunctive relief from and damages for an allegedly defamatory statement contained in defendant's evaluation of plaintiff as a candidate for judge of the circuit

court of Cook County in the November 1974 election. The statement read: "The nature of her practice has not furnished the breadth of experience necessary to qualify her for the office of Judge of the Circuit Court."

Defendant filed an answer to the complaint; defendant's subsequent motion to withdraw its answer and file a motion to strike was denied. After the trial court denied plaintiff's request for injunctive relief, the cause proceeded to a bench trial on plaintiff's claim for damages. At the close of plaintiff's evidence, the court entered judgment for defendant on the twin grounds that plaintiff had failed to prove malice on the part of defendant or to make out a prima facie case of libel. Following denial of her post-trial motion, plaintiff has appealed, contending that the trial court's conclusions are manifestly erroneous and that the court erred in refusing to admit certain evidence pertaining to defendant's evaluation of other judicial candidates as qualified.

The facts, as established by the pleadings and the testimony at trial, are not in dispute. Generally judges of the circuit court of Cook County are elected by the public following the selection of party candidates in primary elections. Recognizing the responsibility of the legal profession to ensure that qualified judges are elected, defendant has undertaken to make recommendations to the public as to whether a particular candidate is qualified. This case involves defendant's evaluation procedures as they existed in 1974, the year plaintiff was selected by her party to be a candidate for circuit court judge.

Defendant's evaluation procedures in 1974 consisted of several phases: a screening process, by defendant's committee on candidates; communication of the results of the screening in a report from defendant's board of managers to defendant's membership; participation by the membership in a "bar primary"; and announcement of the outcome of the balloting to the public. Because the statement complained of by plaintiff appeared in the report to the membership, the major part of the testimony at trial focused on the steps in the process up to that point. Defendant's committee on candidates would send questionnaires to the winners of the primary elections. Upon receipt of the completed questionnaires, a committee member was designated to investigate each candidate. The committee member would typically read the questionnaire, contact the persons listed as references and as adverse counsel in cases recently handled by the candidate, and read the opinions in matters handled on appeal by the candidate. The committee member prepared a summary containing a brief biography of the candidate and the results of the investigation, which would be made available to committee members immediately prior to the candidate's interview with the

committee. Following the interview, the committee members would cast ballots reading simply "qualified" or "not qualified."

A member of defendant's board of managers would attend each committee hearing and report the results of the hearing to the board, typically summarizing the committee member's investigation, the result of the balloting, and his own impression of the reason for the result. The board would vote to accept, modify, or reject the committee's finding and would communicate its decision to a subcommittee of the committee on candidates, the members of which may or may not have been present at the committee hearing on the candidate. Their function was to prepare a sketch of the candidate for inclusion in the report to the membership.

The first paragraph of the sketch contained a summary of the candidate's background, while the second related to the candidate's qualifications. The language of this second paragraph was "stock" or "standard" language, the particular language used being determined wholly by the committee and the board's finding of "qualified" or "not qualified" and by the age of the candidate. Thus, as to the 43 candidates found qualified, the second paragraph of their biographical sketch uniformly read: "On the basis of his [or her] character, experience and ability, he [or she] is qualified for the office of Judge of the Circuit [or Appellate] Court." As to the 13 candidates found not qualified, the two youngest were described as "not qualified for the office of Judge of the Circuit Court by reason of lack of experience." Each of the other 11 candidates found not qualified, including plaintiff, was described in these terms: "The nature of his [or her] practice has not furnished the breadth of experience necessary to qualify him [or her] for the office of Judge of the Circuit Court." Defendant's representatives testified that the language of this last paragraph was chosen for two reasons: first, because it seemed as inoffensive a way as possible to communicate a finding of "unqualified"; and second, because it was broad enough to embrace many factors, including the actual nature of the candidate's practice and experience as well as the candidate's legal knowledge, temperament, and possible judicial temperament, and thus could be used for virtually all candidates not recommended.

The remainder of the trial testimony focused on plaintiff's specific background and her evaluation within the framework described above. Plaintiff offered testimony showing that her practice was general and covered almost all fields, especially business problems but also divorce, probate, some criminal work, and litigation on the trial and appellate levels. After she submitted her completed questionnaire, it was assigned to a committee member for investigation. The committee member's summary of the investigation stated that he called plaintiff's references

and all thought highly of her, mentioning her integrity, experience, intelligence, and fairness. However, at trial he testified that two other lawyers whom the references suggested he contact were of the opinion that she would not make a good judge, and some references referred to her lack of legal experience. He testified that he thought plaintiff had had broad experience, but with certain holes in it, as reflected by the type of cases she handled, particularly on appeal. But the chief reason for the committee's negative vote was the opinion, based on plaintiff's personal interview, that plaintiff lacked judicial temperament. Another committee member reiterated this view, that the totality of her experience, particularly her demeanor, militated against a favorable vote. The committee's finding of "unqualified" was confirmed by the board and resulted in the preparation of plaintiff's biographical sketch for inclusion in the report, along with the sketches of all the other candidates, as follows:

> "CATHERINE COOK ANAGNOST
>
> Age 55. She received a Diploma in Commerce from Northwestern University in 1942. She attended Loyola University, University of Chicago and the University of Illinois. She is a Certified Public Accountant and was certified to take the Bar examination in 1948 pursuant to Illinois Supreme Court Rule 58 providing for law office study. She was admitted to the Bar in 1948 and has been engaged in the practice of law since that time.
>
> The nature of her practice has not furnished the breadth of experience necessary to qualify her for the office of Judge of the Circuit Court."

Prior to dissemination of the report to defendant's membership, which then numbered 9800, plaintiff petitioned defendant for reconsideration of the finding, but no action was taken on the request. Plaintiff then filed the instant action.

 █ The parties agree that defendant has a legitimate interest in the quality of judicial candidates and that by becoming such a candidate plaintiff opened herself up to a degree of comment that would otherwise not be permissible. Plaintiff further concedes that such comment was privileged and that the privilege could not be overcome without proof that the statement was made with "actual malice" as defined in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 668, 84 S. Ct. 710, and subsequent cases—that is, with knowledge that the statement was false or with reckless disregard of whether it was false or not. (376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710.) To establish recklessness, " '[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' " (*Tunnell v. Edwardsville Intelligencer, Inc.* (1969), 43 Ill.

2d 239, 244, 252 N.E.2d 538, *cert. denied* (1970), 397 U.S. 1021, 25 L. Ed. 2d 530, 90 S. Ct 1259, quoting *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323.) The burden is on the plaintiff to make this showing by clear and convincing evidence, and the standard of review of the trial court's determination on this issue in a bench trial is whether it is against the manifest weight of the evidence. *Guthrie v. Annabel* (1977), 50 Ill. App. 3d 969, 365 N.E.2d 1367; see *In re Estate of Lindberg* (1979), 69 Ill. App. 3d 714, 721, 388 N.E.2d 148 (standard of review of a directed finding is the same as after a complete bench trial).

■ The court below found that plaintiff had not met her burden of showing actual malice. We agree. Plaintiff argues that defendant's evaluation procedures demonstrate the requisite reckless disregard for truth or falsity, in that defendant affixed its stock "breadth of experience" label to her biography without regard to the true basis for its decision, *i.e.*, lack of judicial temperament. But the record rebuts the contention that defendant "in fact entertained serious doubts as to the truth" of the statement complained of, even if it is a stock phrase. Rather, there was testimony that defendant employed the phrase not only because it was thought to be inoffensive (which proved to be wishful thinking), but because it was broad enough to encompass many factors, including the candidate's temperament. Indeed, plaintiff herself admitted at trial that temperament is developed largely through experience. There was also testimony that some committee members did have questions about defendant's practice and experience, broad as they might be in terms of number of areas of law covered. The trier of fact, who heard the witnesses testify, found that plaintiff did not bear her burden of showing defendant published the statement complained of with serious doubts as to its truth. That decision is not against the manifest weight of the evidence and should not be disturbed on appeal. *Guthrie v. Annabel* (1977), 50 Ill. App. 3d 969, 972-73, 365 N.E.2d 1367.

■■ Because defendant's statement, even if libelous, was privileged, we need not review the trial court's finding that the statement was not defamatory. However, we note that not every expression of opinion touching on a person's capabilities or qualifications constitutes a defamation, no matter how much the complained-of statement may injure the subject person in his own conception. (*Byars v. Kolodziej* (1977), 48 Ill. App. 3d 1015, 1017, 363 N.E.2d 628.) Moreover, even if defendant's statement could be construed as being "injurious to the good name or reputation" of plaintiff (*Byars*), or as "imput[ing] a want of * * * capacity in the legal profession" (*McGuire v. Jankiewicz* (1972), 8 Ill. App. 3d 319, 320, 290 N.E.2d 675), it is readily apparent that the statement could also be construed innocently and therefore be nonactionable as a

matter of Illinois law. (See, *e.g., Wexler v. Chicago Tribune Co.* (1979), 69 Ill. App. 3d 610, 387 N.E.2d 892.) Reading the evaluation as a whole, the statement can be construed as suggesting that plaintiff has had a specialized practice, such as tax, accounting, and estate work, that may qualify her for some judgeships but not this one. Indeed, the phrase "breadth of experience" could be construed as embracing, *inter alia,* temperament gained as a result of experience, as defendant's representatives testified they understood it and as plaintiff's testimony and even one of her proffered dictionary definitions of "experience" suggest. (Webster's New Twentieth Century Dictionary (unabridged 2d ed. 1975) gives as one definition: "effect on one of anything or everything that has happened to him * * *.") Finally, in view of the context in which the statement appeared, a report applying the same stock phrase to 10 other candidates found not qualified, it is even possible the statement could be construed simply as defendant's way of saying a candidate was not qualified, and nothing more. In any event, the conclusion of the trial court that the statement did not constitute libel was correct.

As to plaintiff's claim that the trial court erred in refusing to admit evidence pertaining to defendant's evaluation of other candidates, this court has already issued an order that that material is not relevant to the issues on appeal. In view of the reasoning set out above, there is no reason to depart from that ruling and we need not consider plaintiff's claim of trial error.

The judgment of the trial court in favor of defendant is therefore affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.