DR. NORRIS A. ERICKSON, Plaintiff-Appellee, v. AETNA LIFE & CASUALTY COMPANY, Defendant-Appellant.

Second District   No. 2—83—0580

Opinion filed September 24, 1984.

754

David P. Meyer and Kendall D. Griffith, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellant.

John P. Callahan, of Casey, Krippner & Callahan, of Geneva, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff Dr. Norris A. Erickson filed this libel action in the circuit court of Kane County seeking damages from defendant Aetna Life & Casualty Company (Aetna). Dr. Erickson, a chiropractor, treated a patient insured by defendant. Subsequently, on the basis of information

contained in the defendant's file regarding plaintiff's treatment of the insured, plaintiff brought a claim against defendant for libel. After a jury trial plaintiff was awarded both compensatory and punitive damages. Defendant appeals.

On appeal defendant Aetna contends that the statement contained in defendant's file was not libel *per se* and that the statement was absolutely privileged because it was used in a workers' compensation proceeding. Defendant argues it was entitled to judgment notwithstanding the verdict because the evidence overwhelmingly favored defendant on the following issues: (a) whether the statement was defamatory; (b) whether the statement was false; (c) whether the defendant knew the statement to be false; and (d) whether defendant acted with actual malice on the punitive damages question. Defendant also contends that it is entitled to a new trial because the verdict is against the manifest weight and because the trial court failed to give defendant's tendered special interrogatories.

Plaintiff treated Pauline Ratajczak for injuries she sustained while employed as a school bus driver. Ratajczak saw two other doctors after her November 16, 1979, injury. In early 1980 plaintiff sent a bill for chiropractic services. When a period of time had passed and he was not paid he contacted defendant. Plaintiff testified that John Markuson, a senior account supervisor for defendant Aetna, told him that the bill was not paid because plaintiff was not a physician. Markuson testified that he discussed the case with Sheila Lance, medical cost coordinator for defendant, and they determined that the treatment rendered was unnecessary and the amount of the bill was unreasonable.

The alleged defamatory publication in this case was made by defendant on a form entitled "Chiropractic Claims Review Committee of Illinois, Claim Evaluation Report." In June of 1980 Aetna was advised of the existence of this committee. The purpose of the committee was to provide claims review of individual chiropractic claims that involved the relationship between the doctor, patient and "third party payer." A blank "Claim Evaluation Report" accompanied the letter from the chairman of the committee.

The Ratajczak case was assigned to Richard O'Brien, a trainee claim representative for defendant. He was told to obtain a chiropractic claim review on the file. O'Brien testified that after a cursory reading of the instructions, he filled out the form himself. He conceded that it was a mistake for him to have filled out the form and that he did not discuss the contents of the form with anybody in his office. The form was filled out as follows:

A1
*PL EX # 1*          *PL Ex # 1* (2)

DATE OF EVALUATION_____          CASE #_____

## CHIROPRACTIC CLAIMS REVIEW COMMITTEE OF ILLINOIS

Direct Correspondence To
**CHAIRMAN**
FRANK C BEMIS D C
240 West Elm
Alton Illinois 62002
618-466-5321

### CLAIM EVALUATION REPORT

Requested by

Aetna Life and Casualty          Date _6-25-80_

2111 Plum Street          PATIENT _Pauline Ratajczak_

Aurora Il 60555          DOCTOR _Dr Norris Erickson_

Claim Representative Richard OBrien          CLAIM # _D 17 5490854 MR_

1    Examination as described by the attending doctor (is) (is not) usual and customary

2.    X-Ray/Laboratory (is) (is not) usual and customary relative to the diagnosis as described by the attending doctor, and the information as submitted in the file

3    The frequency of care rendered to patient (is) (is not) usual and customary as seen in evaluating chiropractic claims, relative to the diagnosis, type of case, and information in the file as submitted.

4    The term of care (is) (is not) usual and customary as seen in evaluating chiropractic claims, relative to the diagnosis, type of case, and information in the file as submitted.

5    The treatment of the condition, as diagnosed by the attending doctor (is) (is not) within the scope of chiropractic practice and licensure in the State of Illinois.

6    As of _6-3-80_ the care rendered in this instance, relative to the diagnosis and information submitted in the file, appears to be of essentially a maintenance type of care

7    REMARKS
    The duration of the care and treatment in this case appears to be unreasonable and unnecessary for the injury involved. Pauline Ratajczak received care from Dr Erickson from November 19 1979 until June 3 1980. Total charge for this treatment was $692.50.

SECRETARY
GERALD A DRISCOLL D C
5647 W Montrose Ave
Chicago Illinois 60641
312 282-6648

MEMBERS
VIRGIL C JOHNSON D C
526 Dundee Avenue
Elgin, Illinois 60120
312-741-5806

ROGER D HULSEBUS, D C
7th & Washington
Oregon Illinois 61061
815-732-2826

(9)

The "Claim Evaluation Report" in issue was a printed form which contained six printed comments regarding the type of care received by the claimant. As is apparent from the form itself, O'Brien indicated that both the frequency of care rendered and the term of care was not what was usually and customarily seen in evaluating chiropractic claims, relative to the diagnosis, type of case, and information submitted. O'Brien also entered the following language: "The duration of the care and treatment in this case appears to be unreasonable and unnecessary for the injury involved. Pauline Ratajczak treated with Dr. Erickson from November 19, 1979, until June 3, 1980. The total charge for this treatment was $892.50." O'Brien had no medical or chiropractic background other than his experience with workers' compensation files.

O'Brien testified that the claim report he prepared required that a check be attached to it, but he did not know if a check was prepared or whether or not the form was ever sent to the chairman of the Chiropractic Claims Review Committee of Illinois. O'Brien had made two status reports on the file which noted that they were waiting for the outcome of the chiropractic review committee.

Defendant's attorney, William Vanderwater, read O'Brien's report and believed that it supported Aetna's contention that the chiropractic care was not necessary and had been unnecessarily prolonged. Vanderwater showed the claim report to the attorney for Ratajczak, Richard Hannigan. Hannigan considered the report to be damaging to his client's case, and testified that the report "blew his case out of the water." Vanderwater introduced the report in evidence at the workers' compensation hearing. Ratajczak did not receive the temporary benefits or payment of the chiropractor's bill she had sought at that stage of the proceedings. Subsequently, Dr. Erickson contacted Hannigan and told him that the committee report had never been prepared by the chiropractic review committee. Later, Vanderwater also told Hannigan that the exhibit was a phony. Hannigan contacted the arbitrator and determined that it would be necessary to appeal the decision of the arbitrator to the full commission. After he discussed this with Aetna, Aetna was willing to negotiate a settlement for the first time. Aetna settled the case for $30,000, conditional upon Ratajczak paying her own chiropractic bills out of that sum.

In early June of 1981, Hannigan received a letter from Aetna, addressed to Dr. Erickson, which stated that Aetna would pay the chiropractic bill in full and conceded that it had made a serious error. Within a few days of receiving the letter Hannigan received a call from John Markuson of Aetna, who requested that Hannigan send the

letter back because it was mailed by mistake. Hannigan responded by saying, "You're kidding."

Sheila Lance, medical cost controller for defendant Aetna, testified that she received a telephone call from a member of the chiropractic review committee inquiring about the Ratajczak file. Lance pulled the file. When she saw the report she realized it had been filled out by O'Brien, not by the Claims Review Committee. She showed it to Markuson, her supervisor, and told him what she had discovered. Lance and Markuson were both surprised at the development, and Lance contacted attorney Vanderwater. Vanderwater then talked to Hannigan, and they appeared before the arbitrator again. Lance wrote the letter explaining the "serious error" and offered to pay plaintiff's bill. However, Lance testified that although she had written this letter, the offer to pay the bill had been retracted. They still refused to pay the bill and maintained that the treatment was not "reasonable and necessary." She testified that on the basis of the other medical care received by Ratajczak, the chiropractic treatment was not needed. The Lance letter was never sent to plaintiff, but did go to other parties, including plaintiff's attorney.

On June 10, 1981, John Markuson, Lance's supervisor, wrote a letter which did not concede a serious error, but rather indicated that the request for chiropractic review was being resubmitted and that when the results of that review committee were received they would be substituted in the record before the Industrial Commission. Markuson did not know if the chiropractic review committee ever made a finding on this case. Markuson testified that even though he thought there had been a mistake made he felt that the treatment was not reasonable and necessary and that the bill should not be paid at that time.

Plaintiff presented evidence that workers' compensation claims amounted to 19 to 20% of plaintiff's practice in 1979 and at the time of trial in 1983 those claims represented 15½% of his practice. After the trial the jury found in favor of plaintiff. Damages were assessed in the amount of $25,000 and punitive damages were assessed in the amount of $67,000.

Defendant's first contention on appeal is that the trial court erred in denying its motions for summary judgment and directed verdict because plaintiff did not have a cause of action against defendant and/or failed to sustain his burden on essential elements of his cause of action for libel. The first consideration we discuss is the question of whether the words used in this case are actionable under the innocent construction rule discussed in *Chapski v. Copley Press* (1982), 92 Ill.

2d 344, 442 N.E.2d 195. *Chapski* modified that rule and found that a preliminary determination on this question should be made as a question of law. The *Chapski* court held that the alleged defamatory statement is to be considered in context, and, if it can reasonably be innocently interpreted or interpreted as referring to someone other than the plaintiff, it cannot be actionable *per se.*

■ Defendant, in its motion for summary judgment, urged that application of the modified innocent construction rule requires a finding that the statement is nonactionable and not libelous *per se.* We disagree. With regard to the present statement, we believe that there is no question as to whether the statement was directed to plaintiff— it referred to plaintiff and no one else. Further, considering the context of the statement made by defendant, we do not believe it can be given an innocent construction. Although, in the present case, the statement on its face was limited to comments on "the care and treatment in this case ***," we nonetheless believe that when one considers the context of the entire statement, an innocent construction cannot be found.

Defendant compares the statement made in the instant case to that made by a physician about another physician's report in the case of *Anderson v. Matz* (1978), 67 Ill. App. 3d 175, 384 N.E.2d 759. *Anderson* was decided before *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195. In *Anderson,* a physician made a statement about another doctor in a report to an insurance company. The doctor noted that there was a question about an EEG report and stated he would be "happy to review those reports, although, if they are the usual type of thing that Dr. Anderson puts out with her usual recommendations for anticonvulsive treatment they are of no clinical value and should not in any way influence your thinking in this case." (*Anderson v. Matz* (1978), 67 Ill. App. 3d 175, 177, 384 N.E.2d 759, 760.) The trial court found that these statements were susceptible of innocent construction and were not libelous. This finding was affirmed by the appellate court, which noted that in the field of medicine doctors may arrive at different conclusions and libelous statements must be examined in that context. We believe that *Anderson* is entirely distinguishable from the present case. In the case at bar the report found to be libelous was not prepared by a doctor. Although it appeared to have been prepared by the Chiropractic Claims Review Committee of Illinois, it was actually prepared by defendant's employee, who was not a doctor. Therefore we are presented with an entirely different situation than in *Anderson.* The present case does not involve a difference of opinion between doctors.

Defendant urges that the defamatory statement was limited to a particular case and is therefore not actionable *per se*. Citing *Valentine v. North American Co. for Life & Health Insurance* (1973), 16 Ill. App. 3d 277, 305 N.E.2d 746, defendant urges that the comments made by O'Brien in the instant case were nonactionable as a matter of law. *Valentine* was a case where the defendant described the plaintiff, an insurance salesman, as a "lousy agent." The court noted that words were actionable *per se* if they tend to prejudice or injure a person in his profession or business, and those words must impute some incapacity or lack of due qualification to engage in the trade or profession. (16 Ill. App. 3d 277, 280, 305 N.E.2d 746, 748.) The court held that under the innocent construction rule adopted in Illinois the language "lousy agent," considered in context, should be construed to be nonactionable as a matter of law. We believe *Valentine* is distinguishable from the present case. The statement made by the defendant in that case was not made by what purported to be a review committee of insurance agents. In the context of the present case the prejudicial effect of the defendant's statement cannot be ignored. Further, the modified rule of *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, has been applied with an emphasis on protecting an individual's interest in vindicating his good name and reputation as well as first amendment interests. (*Costello v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009, 445 N.E.2d 13.) *Valentine* did not apply the modified rule.

If a statement is found to be libel *per se,* then special or pecuniary damages need not be proved. (*Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 266, 371 N.E.2d 874, 879.) Considering the issue of whether the statement was libelous *per se*, it has been held that there are four categories of words which constitute libel *per se*. Only two of those categories are relevant here—words or statements which impute unfitness or want of integrity in performing the duties of an office and those which impute a lack of ability in a person's business, trade or profession. (*Howell v. Blecharczyck* (1983), 119 Ill. App. 3d 987, 991, 457 N.E.2d 494, 497.) In *Costello v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009, 445 N.E.2d 13, a county board member brought an action against the local newspaper for libel. The paper had printed an editorial which repeatedly called the plaintiff a liar and included an exclusive reference to "two more years of the Costello brand of lying leadership." (111 Ill. App. 3d 1009, 1011, 445 N.E.2d 13, 15.) This language was held to be an assault on the plaintiff's character in general rather than an attack on his conduct in a particular instance. However, the *Costello* court then applied the innocent construction

rule as clarified by the supreme court in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195. Under *Chapski*, the *Costello* court held that a defamatory, rather than an innocent, meaning was more probable.

Plaintiff contends that both his integrity and reputation as a chiropractor were severely damaged by the report issued in this case. We note that plaintiff was a private person and that the law relating to public figures is not controlling in the instant case (see *Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 444 N.E.2d 253, 258). Plaintiff argues that *Brown & Williamson Tobacco Corp. v. Jacobson* (7th Cir. 1983), 713 F.2d 262, supports its position. The *Brown & Williamson* court found that a broadcast by Walter Jacobson which urged that a cigarette company had geared its advertising to "hook" youngsters on smoking was libelous *per se*. The court noted that libel and slander had merged in Illinois, but that a statement to be libelous *per se* must be not only within the four categories, it must be "sufficiently defamatory to justify an award of damages without proof of actual damage." (713 F.2d 262, 268.) Quoting from *Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 58, 223 N.E.2d 419, 422, the court stated that the statement must be " ' "so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be, and is, dispensed with." ' " (*Brown & Williamson Tobacco Corp. v. Jacobson* (7th Cir. 1983), 713 F.2d 262, 268.) The court found Walter Jacobson's statement to be libelous *per se* and found that some harm to the cigarette company was highly likely. In the instant case, the harm to plaintiff's chiropractic practice was also likely.

Defendant argues that under the case of *Britton v. Winfield Public Library* (1981), 101 Ill. App. 3d 546, 550, 428 N.E.2d 650, 653, the defamatory statement must be of a general character rather than a criticism of plaintiff's action in a single case. We disagree. We believe that under the facts of this case, where the statement was made on a report which purported to be a review by plaintiff's peers in the chiropractic profession, the statement carried such great weight that it was libelous *per se*. Further, under the modified rule set forth by *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, which was decided after *Britton*, we do not believe that when the publication is considered in context it can be innocently interpreted. Although, in the present case, it was argued that the publication was not actionable because it alleged a single act of misconduct, the context of the publication creates an aura of incompetence because it purportedly was the decision of a committee of plaintiff's peers. Plaintiff

analogizes this to an attorney being reprimanded by the Attorney Registration and Disciplinary Commission of the Bar Association for overcharging or doing unnecessary work. It creates the appearance of misconduct that reflects on one's practice as a whole. While one accusation or mistake may not be actionable, if the statement imputes a "lack of qualities which the public has a right to expect of the plaintiff in his calling, it may be actionable." (Prosser, Torts sec. 112, at 759 (4th ed. 1971).) As recently stated in *Cartwright v. Garrison* (1983), 113 Ill. App. 3d 536, 542, 447 N.E.2d 446, a false statement which imputes a lack of ability in one's profession, or an unfitness to perform one's employment, is actionable as defamation. In the context of the facts as presented to the trial court, we believe the trial court properly denied defendant's motions for summary judgment and directed verdict.

■ Defendant next contends that because the report was used in a workers' compensation proceeding it is absolutely privileged. Generally, it has been held that an absolute privilege protects anything said or written in a legal proceeding. (*Weiler v. Stern* (1978), 67 Ill. App. 3d 179, 384 N.E.2d 762.) Public policy forbids the maintenance of any action, the trial of which would inevitably lead to a disclosure of matters which the law itself regards as confidential and with respect to which it will not allow the confidence to be violated. (*Krumin v. Bruknes* (1930), 255 Ill. App. 503.) It has been held that the only requirement for application of the privilege is that the communication pertain to proposed or pending litigation. (*Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 615, 290 N.E.2d 912.) (Restatement (Second) of Torts sec. 586 (1977).) The *Macie* court noted that the question of whether the statement was pertinent to the legal proceedings is not applied strictly and is a legal question for the court to decide.

On the other hand, defendant contends that in the instant case the statement, which concerned the reasonableness, frequency and duration of the claimant's chiropractic treatment, was highly pertinent because the employer or the insurer is obligated to pay only reasonable and necessary costs resulting from the injury. Ill. Rev. Stat. 1981, ch. 48, par. 138.8(a).

Defendant cites the case of *Libco Corp. v. Adams* (1981), 100 Ill. App. 3d 314, 426 N.E.2d 1130, to support its proposition that the subject statement is protected by judicial privilege. However, the *Libco* court noted that the purpose of the privilege was to secure to attorneys, as officers of the court, the utmost freedom in their efforts to secure justice for their clients. The privilege, it noted, is based on the

tenet that conduct which otherwise would be actionable should escape liability because the defendant is furthering an interest of social importance. (100 Ill. App. 3d 314, 426 N.E.2d 1130, 1132.) By contrast, in the instant case, the statement was not made by an attorney, but rather by the insurance company which was going to be required to pay for the medical treatment which it alleged was unreasonable and unnecessary. Therefore, it is manifest that the purpose of the privilege would not be furthered by applying it to the present situation, where the author of the statement was not furthering an interest of social importance. Only when the interest sought to be protected is one of paramount importance can the defendant's immunity for false statements be absolute. (Prosser, Torts sec. 114, at 776 (4th ed. 1971).) If the statement has relatively less weight from a social point of view, then immunity is a qualified immunity. A qualified immunity, unlike an absolute immunity, is conditioned upon publication in a reasonable manner and for a proper purpose. (Prosser, Torts sec. 115, at 786 (4th ed. 1971).) We cannot say the statement here was made in a reasonable manner. The defendant concedes that the report filled out by O'Brien was, if not erroneous, then at least not what it appeared to be—a chiropractic claim review committee report. Therefore, despite the fact that the pertinency or relevancy requirement is a principle that is not applied in the strict sense (*Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 615, 290 N.E.2d 912), we do not believe the statement made in the instant case can be viewed as privileged.

The defendant's next contention on appeal is that the plaintiff failed to sustain his cause of action for libel and failed to sustain an essential element of the claim, *i.e.*, that the statement about which he complains is false. Defendant argues that the plaintiff had the burden of proving that the frequency and duration of the care was usual and customary as well as reasonable and necessary for the injury received. However, this argument misses the point of the libel proceeding which occurred at the trial court level. Defendant concedes that a chiropractic review committee at no time reviewed the plaintiff's treatment of defendant's insured in this case. Therefore, the question of whether or not the plaintiff's treatment was reasonable and necessary was not in issue below. The evidence clearly showed that the statement in the report was false in the sense that it was a phony report.

Defendant also argues that the plaintiff failed to prove that it knew the statement to be false or lacked reasonable grounds for believing the statement to be true. Similarly, it urges, plaintiff failed to meet his burden of proving that the defendant acted with actual malice. While it is true that the plaintiff must prove defendant had

knowledge of the falsity, or in the alternative, lacked reasonable grounds for believing the truth of the statement and that punitive damages can only be awarded in libel if the defendant acted with actual malice, in the instant case there was evidence to support the jury's decision that the statements were made with knowledge and malice. A number of defendant's employees reviewed the file after O'Brien had placed the chiropractic review committee report in it. From this evidence the jury could have concluded that they saw the report and were aware that it was both false and that there was no reasonable basis for presuming that it was true. The testimony of these witnesses was sufficient to show with convincing clarity that the defendant acted with actual malice. (*Troman v. Wood* (1975), 62 Ill. 2d 184, 340 N.E.2d 292.) To prove "actual malice" the plaintiff need not show malice in the moral sense of hate, vindictiveness or animosity but may prove a wanton disregard of the rights of the others. (*Bloomfield v. Retail Credit Co.* (1973), 14 Ill. App. 3d 158, 302 N.E.2d 88.) Further, the question of whether clear and convincing evidence of "actual malice" was shown is a question for the trier of fact. (*Guthrie v. Annabel* (1977), 50 Ill. App. 3d 969, 973, 365 N.E.2d 1367, 1370; *Durso v. Lyle Stuart, Inc.* (1975), 33 Ill. App. 3d 300, 304, 337 N.E.2d 443, 447.) Plaintiff did meet his burden of proving actual malice, and the trial court properly denied defendant's motion for a directed verdict.

■ Defendant's next contention is that the verdict of the jury is contrary to the manifest weight of the evidence. The only argument defendant provides in support of this contention is to refer to those arguments previously raised and discussed. Defendant reiterates its contention that the plaintiff failed to prove one or more essential elements of his cause of action. However, as previously stated, if it is determined that the statement is libel *per se*, or if no innocent construction of the statement can be made, the determination of knowledge of falsity, actual malice, or reckless disregard of truth or falsity is a jury determination. In the instant case there was evidence presented to the jury from which they could conclude that such circumstances existed. Thus, we believe the verdict is within the manifest weight of that evidence.

■ Defendant's final contention on appeal is that it was prejudiced by the trial court's refusal of its special interrogatories. Defendant contends that the interrogatories tendered were proper for this case and dealt with an ultimate fact in the case. The Civil Practice Law provides:

> "The jury may be required by the court, and must be required on request of any party, to find specially upon any material

question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1108.)

A special interrogatory is an interrogatory addressed to the jury on some material question of fact. Its purpose is to ask the jury to decide some controlling question which, if answered in the affirmative, would control the general verdict. Hunter, Trial Handbook for Illinois Lawyers sec. 87.8 (5th ed. 1983); *Gasbarra v. St. James Hospital* (1980), 85 Ill. App. 3d 32, 406 N.E.2d 544.

The defendant argues that the following special interrogatories were improperly refused by the trial court:

"Were the matters set forth in the documents substantially true? Answer: ___yes ___no.

Was the defendant, Aetna Life and Casualty Company, guilty of actual malice in publication of the document in question? Answer: ___yes ___no."

Defendant argued, in its post-trial motion, that the trial court improperly denied these requested special interrogatories.

Defendant argues that these are proper interrogatories and that they deal with an ultimate fact of the case which is dispositive. However, with regard to the first interrogatory, as to whether or not matters set forth in the documents were true, as we have discussed, this was not an ultimate issue in the present case. Throughout the case the defendant argued that the question of whether or not the treatment rendered by plaintiff was reasonable and necessary was a proper issue to be decided by the jury. However, it is clear that the jury was not deciding the standard of chiropractic care, but rather was deciding whether or not the report prepared by defendant libeled the plaintiff. Further, there was no evidence by which the jury could determine whether the chiropractic treatment rendered by plaintiff was appropriate. Therefore the requested special interrogatory, which was directed to the truth of the document, was properly denied by the trial court.

The second requested interrogatory concerned the question of whether the defendant was "guilty of actual malice." In *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726, the court characterized actual malice as the publication of libelous matter "with knowledge that it was false or with reckless disregard of whether it was false or not." Actual malice

is an element of a claim for libel when punitive damages are sought. (*Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 441, 444 N.E.2d 253, 258; *Durso v. Lyle Stuart, Inc.* (1975), 33 Ill. App. 3d 300, 304, 337 N.E.2d 443, 447.) The question of whether or not clear and convincing evidence of "actual malice" exists is a question for the trier of fact. *Guthrie v. Annabel* (1977), 50 Ill. App. 3d 969, 973, 365 N.E.2d 1367, 1370.

Although the existence of actual malice is a "material question" which should be submitted to a jury, we are concerned about the use of the phrase "guilty of actual malice." The term "guilty" was not defined in the instructions, and we believe it imposes a greater burden on plaintiff than would otherwise be required. The issue was not whether defendant was guilty or innocent of any charges but rather whether there was clear and convincing evidence that actual malice existed. It has been held that a special interrogatory should contain a single direct question and should not be repetitious, misleading, confusing or ambiguous and should use the same language or terms as are contained in the instructions. *Zois v. Piniarski* (1982), 107 Ill. App. 3d 651, 652-53, 437 N.E.2d 1251, 1252; *Hocking v. Rehnquist* (1968), 100 Ill. App. 2d 417, 241 N.E.2d 337, *rev'd on other grounds* (1969), 44 Ill. 2d 196, 254 N.E.2d 515.

In the instructions presented to the jury in this cause the term actual malice was defined, using the same definition as quoted above in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726. The jury was also instructed that plaintiff was required to prove the first five elements of his case by a preponderance of the evidence. However, with regard to whether plaintiff established actual malice, it was instructed that the burden is stricter, *i.e.*, actual malice must be shown by clear and convincing evidence.

■ Because plaintiff needed to prove actual malice by the standard of clear and convincing evidence (*Guthrie v. Annabel* (1977), 50 Ill. App. 3d 969, 973, 365 N.E.2d 1367, 1370), the use of the term "guilty" could create an unnecessary ambiguity for the jury. The word is most often used in a criminal law setting where proof beyond a reasonable doubt is the standard. Further, a special interrogatory should use the language or terms as contained in the instructions. (*Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 370 N.E.2d 1131, *rev'd on other grounds* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.) Thus, the special interrogatory regarding actual malice was properly refused by the trial court in this case.

When the statement made by defendant is considered in context,

it appears to be a very negative review of plaintiff's conduct as a chiropractor. It did not refer to anyone other than plaintiff (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199), and it imputed to plaintiff a want of integrity and honesty (*Costello v. Capitol Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009, 1014, 445 N.E.2d 13, 17).

Accordingly, for the reasons set forth above, the trial court of Kane County is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.