SANFORD J. BROWN *et al.*, Plaintiffs and Cross-Appellees and Counter-defendants-Appellants, v. ALLEN D. FARKAS, Defendant and Counter-plaintiff-Appellee and Cross-Appellant (Brown's Industrial Uniforms, Inc., *et al.*, Defendants; Eleanor Farkas, Counterplaintiff and Defendant-Appellee).

First District (4th Division) No. 85—3012

Opinion filed December 31, 1986.—Modified on granting of rehearing August 13, 1987.

Boorstein, Freed, Zelechowski, Cohn & Levine, George B. Collins, of Collins & Bertelle, and Robert E. McAuliffe, all of Chicago (Leon Zelechowski and Robert Blecher, of counsel), for appellants.

Robert R. Benjamin & Associates, Ltd., of Chicago (Robert R. Benjamin and Beverly A. Berneman, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

The issues in the appeal arise out of an action by Sanford and Gloria Brown against Allen and Eleanor Farkas for breach of an installment agreement between the parties, in addition to a counterclaim by Allen Farkas against Sanford Brown for defamation. Both actions proceeded as bench trials. The trial court awarded over $240,000 in damages to the Browns in the action on the installment agreement. This agreement was set off against the judgment entered in favor of Farkas against Brown for defamation. The Farkases appeal from the damage award on the basis that the award was inappropriate under the contract. The Browns, in turn, appeal from the defamation judgment, the trial court's decision allowing setoff and the finding that Eleanor Farkas, as guarantor under the installment agreement, was discharged from liability.

As to the defamation action, the trial court entered a judgment against Sanford in the amount of $50,000 in compensatory damages and $1 million in punitive damages in favor of Allen Farkas as a result of a defamatory statement made by Brown. Brown appeals from this order and contends that the statute involved provides immunity to him from a damage award. Alternatively, Brown charges that the damage awards were not supported by the evidence and were excessive. Brown also appeals from the trial court order which set off the judgment received by Sanford and Gloria Brown on the installment agreement against that received by Allen Farkas in the defamation action against Sanford Brown alone. The facts giving rise to both the contract and defamation action are interrelated and are as follows.

Sanford Brown and Allen Farkas met in 1960 or 1961 and Farkas began to work for Brown in 1963, a relationship that continued for the next 20 years. The parties disagree as to whether their relationship remained solely on a business level. In 1979, Brown suffered a stroke and Farkas ran the business during that period. After that time, in 1979, Farkas purchased 50% of the capital stock of Brown's company, Brown's Industrial Uniforms, Inc. Later, in 1982, the Browns decided to sell their remaining interest in the business to Farkas. The sale of the business involved several transactions. Brown's Industrial Uniforms agreed to redeem the stock held by the Browns. Allen Farkas agreed to purchase from the Browns the premises where the business was located under an installment agreement for warranty deed. The installment agreement provided that Eleanor Farkas was to guarantee the obligations of Allen Farkas and Brown Industrial Uniforms under the contract.

During this time, in 1982, as testified to by Sanford Brown, a conversation took place between Brown and Farkas in which Farkas began to describe the breast and vaginal area of his oldest daughter. Brown stated that Farkas then proceeded to an anteroom adjoining Brown's office, where he masturbated into an empty shirtbox and stated in a shrill voice, "Wait till we get home; we're going to play carnival." Brown testified that Farkas stated that the "carnival" game involved "that's where she will sit on my face and I will guess her weight." Brown stated that several months later he considered reporting this incident to the Department of Children and Family Services (DCFS) for investigation. Brown stated that he was aware that one of Farkas' daughters had received psychological treatment and that one of his daughters suffered from a history of bone injuries. Brown testified that in November of 1982 he dialed the DCFS toll-free number; however, he did not make a report at that time. He further stated that at a social affair he had overheard that one of Farkas' daughters had serious psychological problems; however, he could not recall where the affair was at or who the person was who made the comment.

Farkas testified that at some time in February of 1983 Brown called Brown's Industrial Uniforms and left a message on the answering device as follows: "Is it true that Allen masturbates?" Farkas testified that in May of 1983 he sent his monthly payment on the installment agreement for warranty deed to the Browns. The Browns, however, claimed that they did not receive the payment and declared a forfeiture. On May 15, 1983, the Browns filed suit against Farkas to enforce the terms of the installment agreement. After the suit was filed, Eleanor Farkas attempted to present Brown with a cashier's check for the installment due; however, Brown did not accept the payment. The check was then sent to the Browns by certified mail.

Brown testified that on May 21, 1983, he phoned the DCFS and told an intake worker that "there was an employee that I had worked with that was bragging of sexual contact with his daughter." Farkas testified that on May 23, 1983, another message from Brown was left on their phone-answering device. This message stated, "Does Allen still masturbate?" Later that afternoon Farkas and his wife learned that a caseworker from the DCFS, Audrey Macklin, had come to the Farkas home to investigate the call made by Brown. Macklin testified that she conducted a thorough investigation of Allen Farkas in which she interviewed Eleanor, each of the employees and representatives of Brown's Industrial Uniforms, Inc., family members, school counselors and friends. It was Macklin's conclusion that the charge by Brown

was unfounded and that there was no truth in the report.

During this time the suit by the Browns against the Farkases to enforce the installment agreement continued. In addition, Farkas filed a counterclaim alleging, among other things, that Brown had committed slander. The Browns then filed a suit against Eleanor Farkas on her contract of guaranty.

The first issue to be addressed with regard to Brown's appeal from the slander judgment is the award of compensatory damages. Brown propounds three arguments as to this issue. Additionally, Brown challenges the award of punitive damages. Regarding the award of compensatory damages, Brown first argues that the award cannot stand because Farkas failed to present sufficient evidence to support the award. In addition, Brown charges that the Abused and Neglected Child Reporting Act (Act) (Ill. Rev. Stat. 1985, ch. 23, par. 2051 *et seq.*) provides immunity to him from any damages arising out of the submission of a report to the authorities. Brown further alleges that assuming an award of compensatory damages was proper, the amount of the award in this case was excessive.

In an action for defamation, the law recognizes two classes of damages, general and special. General damages are those which the law presumes must actually, proximately and necessarily result from the publication of the defamatory matter. These damages, which include mental suffering and injury to reputation, arise by inference of law and are not required to be proved by evidence. (*Lorillard v. Field Enterprises, Inc.* (1965), 65 Ill. App. 2d 65, 79, 213 N.E.2d 1.) Thus with regard to this element of compensatory damages, Farkas was not required to bring forth evidence of actual injury.

In addition to general damages, there are four classes of words in Illinois which, if falsely communicated, give rise to a cause of action for defamation in which a showing of special damages is not required. These categories include words: (1) imputing commission of a criminal offense; (2) imputing infection with communicable diseases of any kind; (3) imputing inability to perform or want of integrity in discharge of duties of office or employment; and (4) prejudicing a particular party in his profession or trade. (*Resudek v. Sberna* (1985), 132 Ill. App. 3d 783, 787-88, 477 N.E.2d 789.) If a statement is found to be slander *per se*, then special or pecuniary damages need not be proved. *Erickson v. Aetna Life & Casualty Co.* (1984), 127 Ill. App. 3d 753, 760, 469 N.E.2d 679.

In determining whether the particular statement is slanderous, the rule of innocent construction must be applied. This rule requires that the statement is to be considered in context, with the

words and the implications therefrom given their natural and obvious meaning. If, as construed, the statement may be innocently interpreted or reasonably interpreted as referring to someone other than the plaintiff, then that statement is not actionable *per se*. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.) In this case Brown called the DCFS and "told them there is an employee that I had worked with that was bragging of sexual contact with his daughter." Brown argues that this statement when innocently construed cannot be deemed to impute the commission of a crime and therefore is not slander *per se*, thus requiring Farkas to prove special damages. We do not agree.

■■ ■ It is generally recognized that words charging commission of a crime need not meet the same technical requirements as are necessary for an indictment and words fairly imputing a crime are sufficient. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217; *Proesel v. Myers Publishing Co.* (1960), 24 Ill. App. 2d 501, 510, 165 N.E.2d 352.) In this case the statement by Brown was made to an authority which is specifically mandated by law to protect children against crimes of sexual abuse. The statement that Farkas had sexual contact with his daughter made to such an authority can leave little doubt that such a statement imputed to Farkas the commission of such a crime against his daughter. Consequently, having found that the statement made by Brown cannot be innocently construed and that the statement was slander *per se*, Farkas was entitled to an award of special damages without the necessity of proof. *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217.

■ An additional argument raised by Brown with regard to the damage award is that the Act grants immunity from liability to persons who make a report. Specifically, section 9 of the Act (Ill. Rev. Stat. 1985, ch. 23, par. 2059) presumes the good faith of one who reports cases of suspected child abuse or neglect and provides immunity to those who make such reports in good faith. Brown argues that his statement was made in good faith. The trial court, however, determined that Brown did not know the statement to be true and had no reasonable basis to know that it was true, that Brown's behavior in general was corroborative of an attitude of malice and that Brown's subsequent explanations as to his making the statement were hollow with discordance. The trial court, in determining the weight to be afforded the testimony, is in a better position to resolve the credibility of witnesses and the weight to be accorded their testimony, and this court will not substitute its judgment thereon unless an opposite con-

clusion is clearly evident. (*10-Dix Building Corp. v. McDannel* (1985), 134 Ill. App. 3d 664, 674, 480 N.E.2d 1212.) Brown has not presented this court with any evidence indicating that the trial court's finding based upon the DCFS' conclusion and the corroborative evidence presented at trial was erroneous. Consequently, in light of the finding of lack of good faith, Brown is not entitled to immunity under section 9 of the Act.

Finally with regard to the award of compensatory damages, Brown contends that an award of $50,000 is excessive. Among the elements considered in estimating damages, the more customary type of actual harm inflicted by defamatory statements includes impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 346-51, 41 L. Ed. 2d 789, 809-12, 94 S. Ct. 2997, 3010-12; *Troman v. Wood* (1975), 62 Ill. 2d 184, 192, 340 N.E.2d 292.) The amount of damages in a defamation action is a question of fact. (*Van Norman v. Peoria Journal-Star, Inc.* (1961), 31 Ill. App. 2d 314, 336, 175 N.E.2d 805.) In this case Allen and Eleanor Farkas testified extensively regarding the mental anguish, humiliation and embarrassment caused by the DCFS investigation. The Farkases stated that although they had been active in the community prior to the investigation, this activity decreased. Moreover, the Farkases were questioned by friends, neighbors and school associates about the alleged incident. Further, testimony by a witness who knew Allen Farkas personally and professionally also indicated that Farkas' reputation in the community was now tainted, whereas it was once exemplary. In light of this evidence, we do not believe that the damage award was so unconscionable as to persuade this court that it was unjust and actuated by passion or prejudice. Accordingly, the award of $50,000 in compensatory damages is affirmed.

Brown also argues on appeal that the award of $1 million in punitive damages cannot stand because the Act precludes such award, the award is against the manifest weight of the evidence, and the award is excessive. In support of Brown's contention that punitive damages may not be awarded when a false report of suspected child abuse is made, Brown relies upon section 4 of the Act (Ill. Rev. Stat. 1985, ch. 23, par. 2054), which states in pertinent part that any person who knowingly transmits a false report to the Department commits the offense of disorderly conduct under (a)(7) of section 26—1 of the Criminal Code of 1961. The maximum sentence for this Class B misdemeanor is six months' imprisonment (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—3(2)) and a maximum fine of $500. In this case, however, no

criminal action was brought against Brown. As a result, the maximum sentence and fine under the Criminal Code are inapplicable to this civil action brought by Farkas.

■■ Further, Brown argues that the award of punitive damages is against the manifest weight of the evidence. Whether the facts and circumstances of a particular case justify the imposition of a punitive damage award is a question of law. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 211, 454 N.E.2d 210.) Punitive damages may be awarded in actions for slander and, if the words are actionable *per se*, such damages may be awarded on the basis of implied malice. (*Lorillard v. Field Enterprises, Inc.* (1965), 65 Ill. App. 2d 65, 78, 213 N.E.2d 1.) Not only in this case have we found that the slander was *per se* so as to imply malice, but also the trial court made a specific finding of actual malice. Accordingly, an award of punitive damages would not be improper.

■■ Notwithstanding that some award was proper, we believe that the award in this case, in light of the purpose punitive damages are to serve, is excessive and must be reversed and remanded. The nature of punitive damages is to punish the wrongdoer and deter others from committing like offenses. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188, 384 N.E.2d 353.) In awarding punitive damages, courts must exercise caution so as to not impose damages improperly or unwisely. (*Gent v. Collinsville Volkswagen, Inc.* (1983), 116 Ill. App. 3d 496, 505, 451 N.E.2d 1385.) The punishment must also fit the crime. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 713, 450 N.E.2d 1199.) We do not condone the reprehensible knowing and false accusation in this case; however, "[a]n award which is disproportionate to the wrong serves none of the purposes of punitive damages and is excessive." (114 Ill. App. 3d 703, 713, 450 N.E.2d 1199.) We believe that in light of the fact that a $50,000 compensatory damage award against Brown has been ordered, an award of punitive damages in the amount of $50,000 is sufficient to punish Brown and deter others from committing a similar offense. Accordingly, the award of punitives must be reversed.

With regard to Brown's appeal from the denial of his motion for leave to file an additional affidavit in the proceeding against the Farkases on the installment agreement, the brief filed by Brown on appeal fails to present any argument or authority on this point. Accordingly, this issue has been waived on appeal. 87 Ill. 2d R. 341(e)(7).

■■ Additionally, Brown appeals from the trial court order which set off the judgment rendered in favor of Sanford and Gloria Brown on the installment agreement against that obtained by Farkas solely

against Sanford Brown in the slander action. Generally, in order that one judgment may be properly set off against another, it is necessary that there be mutuality of parties. (49 C.J.S. *Judgments* sec. 568(c), at 1045 (1947).) In this case the judgment obtained by Farkas is only against Sanford Brown. Nevertheless, the trial court set off that judgment against Sanford against the one received by both Sanford and Gloria Brown. Such a setoff in this case would be inequitable to Gloria Brown. Accordingly, the setoff was improper.

 Brown also appeals from the entry of summary judgment in favor of Eleanor Farkas which discharged her from any further liability under the contract. Under the contract in this case, Eleanor unconditionally and absolutely guaranteed the terms of the contract. A guaranty contract which is unequivocal in its terms must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports. (*Bank of Homewood v. Sjo* (1983), 113 Ill. App. 3d. 179, 182, 446 N.E.2d 1214.) Only if payment or satisfaction of the principal obligation occurs is the guarantor discharged of the obligation. (*Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 185, 450 N.E.2d 347.) In this case, the trial court's decision of October 4, 1985, awarded the Browns over $240,000, an amount which includes past-due installments and the balance due on the contract. By our decision here on appeal, we reduced Farkas' punitive damage award to $50,000. We also reversed the trial court's decision allowing Farkas to set off this slander judgment against that amount due to the Browns. Consequently, applying the law just stated, only when the judgment owing the Browns is fully satisfied will Eleanor Farkas be relieved of her obligation as guarantor. Therefore, the entry of summary judgment in favor of Eleanor Farkas was in error.

 The Farkases appeal the judgment of the trial court awarding $240,000 in damages in Brown's action on the installment agreement. In their complaint against the Farkases, the Browns alleged that the Farkases had defaulted in making payments due under the installment agreement. Accordingly, the Browns sought to terminate the agreement, reclaim all of the collateral securing performance under the agreement and recover costs, expenses and attorney fees.

The record is unclear as to how certain matters transpired; however, it appears that a hearing on the Browns' action was conducted in October of 1984. The judgment order was entered on February 19, 1985, and determined that the Browns had waived forfeiture and that the Farkases were to become current in all respects under the contract. In November of 1984, before that judgment was entered, the

Browns apparently regained possession of the property. Subsequently, the trial court entered a supplemental judgment in October of 1985 in which the Browns were awarded over $240,000, an amount which includes the past-due installments and the balance due on the contract. The Farkases argue that this award is inappropriate because the Browns had declared forfeiture under the contract and cannot now require performance by the Farkases under the contract.

The trial court in its order of February 19, 1985, made a specific finding that although the Browns' conduct with regard to the installment contract was confusing, forfeiture had in fact been waived by the Browns. The Farkases' argument on appeal assumes just the opposite, namely, that the Browns in fact accepted the forfeiture. Based upon this assumption, Farkas argues that the Browns cannot disaffirm the contract and then receive damages based upon affirmance of the contract and that therefore, the decision of the trial court awarding past-due installments and the balance on the contract is erroneous.

Farkas is correct that a party cannot disaffirm a contract by accepting forfeiture and then seek an award of damages based upon the affirmance of the contract. (See generally, D. Dobbs, Remedies sec. 1.5 (1973).) However, the only argument presented by Farkas to test the finding that the Browns waived forfeiture, or disaffirmed the contract, is the statement that the Browns had regained the property from the Farkases in November of 1984. Whether or not the Browns did regain the property, we do not believe that this fact alone would alter the finding that the Browns had waived forfeiture. Rather, at the time of the trial court hearing, the conduct that was examined to determine whether the Browns acquiesced in the forfeiture was the acceptance of Farkas' late payments after declaring forfeiture. The return of the property to the Browns did not occur until after the hearing as to the installment contract in October of 1984 and after the Browns accepted the tender of a late payment by Farkas. We do not believe that this fact of regaining the property, which was presented to the trial court in Farkas' post-trial motion and on appeal to this court, sufficiently demonstrates that the trial court erred in finding that the Browns had waived forfeiture. Accordingly, the only question is whether the judgment entered by the trial court was correct.

■■ In its judgment of October 4, 1985, the trial court awarded the Browns, among other things, the past-due installments and the balance due under the contract. Additionally, Farkas was entitled to a return of the property. We do not find any error in this judgment. The

trial court determined that the installment contract was still in full force and effect. Consequently, the Farkases would be required to become current on their obligation under this contract and to complete the contract. The damage award entered by the trial court does precisely that.

For the foregoing reasons, as to the appeal by Brown from the slander judgment of August 13, 1985, the award of compensatory damages is affirmed and the award of punitive damages is reduced to $50,000.

As to the appeal by the Farkases from the order of October 4, 1985, that order is affirmed. With regard to the Browns' appeal from the trial court order of October 4, 1985, those portions of the order allowing a setoff of judgments and granting Eleanor Farkas' motion for summary judgment are reversed.

Affirmed in part; reversed in part.

JOHNSON and LINN, JJ., concur.