JACK PEASE, Indiv., *et al.*, Plaintiffs-Appellants, v. INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 150 *et al.*, Defendants-Appellees (C. Robert Darling, Defendant).

Second District   No. 2—90—0064

Opinion filed February 11, 1991.

REINHARD, J., concurring in part and dissenting in part.

Thomas K. Gerling, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan (Louis W. Brydges, Jr., of counsel), for appellants.

Louis E. Sigman, of Baum & Sigman, Ltd., of Chicago, and Holmstrom & Kennedy, of Crystal Lake (Dale D. Pierson and Harold C. McKenney, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, Jack Pease, individually, and J. Pease Construction, Inc. (Pease), appeal from an order of the circuit court of Lake County granting a motion to dismiss and summary judgment and partial summary judgment as to various counts of Pease's third amended complaint against defendants, International Union of Operating Engineers Local 150 (International), William E. Dugan (Dugan), Anthony S. Magdic (Magdic), and Keith Strong (Strong).

By way of background, Pease and International were involved in a dispute over Pease's failure to sign a collective bargaining agreement with International. International began picketing at a sand and gravel pit partially owned by Pease and where several of his employees worked. The picketing was to protest the alleged failure of Pease to pay his employees operating heavy equipment the "area standard" for wages and benefits.

The allegations of Pease's third amended complaint arise from two separate incidents. On August 19, 1987, Magdic and Strong reported to the Lake County sheriff that Pease had threatened them with a revolver. Pease admitted that on that day he had a conversation with Magdic and Strong at the sand and gravel pit site and that at the time he had a toy squirt gun or cap gun tucked in the waistband of his pants. He also had a handgun, unloaded and in a gun case in his vehicle. Pease denied threatening Strong or Magdic. A warrant was issued for Pease's arrest charging him with two counts of aggravated assault and one count of unlawful use of weapons. He was arrested but was found not guilty of all charges following a jury trial.

The second incident occurred on September 30, 1987. On that day, the Northwest Herald printed an interview with Dugan, the president of International. In response to the questions by the Herald reporter, Dugan was quoted as making the following statements about Pease:

> " 'He lies a lot'. Dugan said of Pease. 'He's dealing with half a deck, did you know that? I think he's crazy.' "

In his third amended complaint, Pease alleged that Dugan and International (under a theory of *respondeat superior*) had defamed him by the above remarks (counts I and II). In counts III and IV, Pease alleged that he had been defamed by Magdic and International in that Magdic had told the police that Pease had pointed a revolver at him, knowing that statement to be false. In counts V and VI, Pease alleged false imprisonment by Magdic and International. In counts VII and VIII, Pease alleged defamation by Strong and International based upon the same allegations contained in counts III and IV. In counts IX and X, Pease alleged false imprisonment by Strong and International. Counts XI and XII directed against another individual defendant were dismissed by the trial court and are not a part of this appeal. In counts XIII and XIV, Pease alleged malicious prosecution by Magdic and International. In counts XV and XVI, Pease alleged malicious prosecution by Strong. On August 24, 1989, counts VII and VIII (defamation by Strong) were dismissed as untimely filed.

On September 20, 1989, a jury trial in this case commenced. On September 22, 1989, the trial court declared a mistrial. Thereafter, the case was continued for trial to November 27, 1989. Also, on September 22, 1989, Magdic, Strong, and International filed a motion to dismiss the counts alleging malicious prosecution (counts XIII through XVI), on the basis that the warrant for Pease's arrest was issued by the court upon a finding of probable cause. The motion also alleged that those counts failed to allege special injury as a result of the complained-of actions and also failed to allege that Magdic, Strong, or International was the legal cause of Pease's arrest.

On November 2, 1989, Dugan, Magdic, Strong, and International filed a motion for partial summary judgment as to the counts alleging defamation by Dugan and International (counts I and II). The motion argued that Dugan and International were entitled to judgment on those counts because there was no dispute that Dugan believed his statements about Pease to be true; that Pease suffered no damages; and that Pease provoked Dugan's statement.

On November 21, 1989, Magdic, Strong, and International filed a motion for partial summary judgment as to the counts alleging false imprisonment (counts V, VI, IX and X) and on the defamation counts

against Magdic and International (counts III and IV). The motion argued that Pease was arrested pursuant to a warrant issued upon a finding of probable cause and that, under Illinois law, an arrest by a warrant issued upon probable cause is an absolute bar to a claim for false imprisonment. The motion then pointed out that Pease was only charged with misdemeanors, while in order to be defamatory, *per se*, the statement complained of must allege the commission of an offense which is indictable, involves moral turpitude, and is punishable by a term in the Department of Corrections.

On December 15, 1989, the trial court entered an order granting the motion to dismiss counts XIII through XVI (malicious prosecution); granting partial summary judgment to Magdic, Strong, and International as to counts V, VI, IX, and X (false imprisonment); and granting partial summary judgment to Dugan and International as to counts I and II (defamation based upon the newspaper article). The trial court also found that pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) there was no just reason to delay enforcement or appeal of the order. The trial court then entered an order voluntarily dismissing counts III and IV without prejudice. This appeal followed.

On appeal, Pease raises the following issues: (1) whether claims for malicious prosecution and false imprisonment are barred by a judicial finding of probable cause and issuance of an arrest warrant based upon alleged perjured statements; and (2) whether the alleged defamatory statements in this case constitute defamation *per se*, for which actual damages need not be shown.

### FALSE IMPRISONMENT

Pease contends, first, that the trial court erred by granting summary judgment to Magdic, Strong, and International on the false imprisonment counts. Pease's claim for false imprisonment alleged in pertinent part as follows:

"4. That on or about August 19, 1987, MAGDIC wilfully and maliciously directed and procured the arrest of PEASE by Lake County Sheriff's Police by falsely and wrongfully accusing him of a criminal offense.

5. As a result of said unlawful arrest, [Pease] was illegally detained, restrained, and otherwise held against his will by Lake County Sheriff's Police for an extended period of time."

Identical allegations were directed at International and Strong, as well.

■■■ "A motion for summary judgment should be granted where

there is no genuine issue as to any material fact. The court is to determine the existence or absence of a genuine issue as to any material fact from the affidavits, depositions, admissions, exhibits and pleadings in the case. [Citations.] The facts to be considered by the court are evidentiary facts. [Citation.] Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is then appropriate. [Citation.] If the party moving for summary judgment supplies such facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise genuine issues of material fact." *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.

■ It is undisputed that Pease was arrested pursuant to a warrant issued by a judge of the Lake County circuit court. An arrest made pursuant to a validly issued warrant is a complete answer to a claim of false imprisonment. (*Feld v. Loftis* (1909), 240 Ill. 105, 107-08.) Pease did allege that Magdic, Strong, and International "directed and procured" his arrest by giving false information to the Lake County authorities, which information was then used to obtain a warrant for his arrest. However, in his third amended complaint, Pease failed to allege an invalidity in the warrant process itself. In his response to the motion for summary judgment, Pease filed a memorandum but failed to set forth any facts to establish that the warrant itself was invalid.

■ The cases relied on by Pease (*Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116; *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110; *Karow v. Student Inns, Inc.* (1976), 43 Ill. App. 3d 878) all involved arrests made without warrants and are, therefore, distinguishable from the case at bar. We conclude that Pease has not raised a genuine issue of material fact as to whether he was arrested pursuant to a valid warrant. Thus, the trial court correctly entered summary judgment in favor of the defendants on the false imprisonment counts (counts V, VI, IX, and X). Nevertheless, we note that the defendants here may still be liable for malicious prosecution if their conduct in procuring Pease's arrest was undertaken maliciously and without probable cause. See *Feld v. Loftis* (1909), 240 Ill. 105, 107-08; *Bassett v. Bratton* (1877), 86 Ill. 152.

### DEFAMATION

Next, Pease contends that the trial court erred when it granted Dugan's motion for summary judgment as to the defamation action

contained in counts I and II of the third amended complaint. Pease argues that he was not required to prove actual damages.

■ In libel actions, proof of injury is not necessary "where the alleged statement is libelous *per se*—where the words are 'obviously and naturally harmful.' " (*Haberstroh v. Crain Publications, Inc.* (1989), 189 Ill. App. 3d 267, 270, quoting *Fried v. Jacobson* (1983), 99 Ill. 2d 24, 27.) Illinois courts have found four categories of words that can constitute libel *per se*: (1) words which impute the commission of a criminal offense; (2) words which impute that one has a communicable disease which tends to exclude a person from society; (3) words which impute inability to perform or want of integrity in the discharge of duties of office or employment; and (4) words which prejudice a particular party in his profession or trade. *Haberstroh*, 189 Ill. App. 3d at 270.

Words that are mere name calling or found to be rhetorical hyperbole or employed only in a loose, figurative sense have been deemed nonactionable. (*Haberstroh*, 189 Ill. App. 3d at 271.) Dugan's statements, "He's dealing with half a deck, *** I think he's crazy," clearly fit into those categories and are not, therefore, libelous *per se.*

■ Dugan's third remark, however, "He lies a lot," is more troublesome. "[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.* This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question of fact for the jury should the initial determination be resolved in favor of the plaintiff." (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352.) We note that there is no dispute that Dugan was referring to Pease in the above statements.

In *Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402, defendants published an editorial which stated in pertinent part as follows:

> "[Plaintiff] lied to us. There's no nicer way to put it; he simply lied. And when he lied to us, he lied to you. *** Well, he lied. ***
>
> *** Just think, we've got two more years of the [Plaintiff] brand of lying leadership." (125 Ill. 2d at 411-12.)

Although the verdict for plaintiff was reversed on other grounds, the supreme court stated in pertinent part as follows:

"We reject the defendants' contention that the pertinent statements in the editorial are not libelous *per se* because they accuse the plaintiff of dishonesty on one particular occasion. The defendants do not suggest that the disputed accusations may be given a meaning which is not defamatory. Nor does the *Chapski* decision allow us to consider the language, which a number of times accuses [plaintiff] of lying, as being innocent of libelous content *as a matter of law*. The defamatory meaning is evident. [Citation.] The statements in the editorial are not reasonably susceptible to an innocent construction, and are to be considered libelous *per se* because they imputed to [plaintiff] a want of integrity in discharging the duties of his office." 125 Ill. 2d at 416-17.

■ Dugan's statement was made in the following context. Amy Mack, a reporter for the Northwest Herald, interviewed Dugan. She told Dugan that, in a prior conversation with Pease, Pease had told her that the union was directly responsible for the vandalism at his firm; she asked Dugan for a response to Pease's statement, to which Dugan made the complained-of statement. As in *Costello*, the defamatory meaning here is evident, and the statement is not reasonably susceptible to an innocent construction. Therefore, the statement, "He lies a lot," is to be considered libelous *per se* because it imputes to Pease a want of integrity in the discharge of his business, and, therefore, Pease need not prove actual damages.

■ However, Dugan argues the granting of summary judgment was proper because there was no genuine issue of material fact over whether Dugan's statement was made with actual malice. While an action for libel which occurred in the course of a labor dispute was not preempted in order to ensure that the national policy of free and open communications during labor disputes was not chilled, the actual malice standard of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, was held applicable to causes for libel and slander arising out of such disputes. *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, 999, relying on *Linn v. United Plant Guard Workers of America* (1966), 383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657.

The record in this case supports the conclusion that Dugan's statements were, in fact, made during a labor dispute. Pease argues in response that Dugan's statements were not made during a labor dispute. However, in a motion to compel filed August 24, 1989, Pease alleged that "[A]t the time defendants published the alleged defamatory statements in this action, [International] was attempting to orga-

nize J. Pease Construction Co., Inc." Moreover, we reject Pease's reasoning that by applying *Linn* in this case, we are extending an open invitation to unions to publish defamatory statements and avoid the law in Illinois by labeling it a "labor dispute." That reasoning would require us to accept the odd premise that the labor disputes are the excuse for, rather than the cause of, the frosty relations between management and labor.

■ In order to establish that the alleged defamatory statements were made with actual malice, the plaintiff must prove by clear and convincing evidence that the defendant published the defamatory statements with knowledge that the statements were false or with reckless disregard for their truth or falsity. (*Costello*, 125 Ill. 2d at 418-19.) Reckless disregard for the truth may be found only where the evidence shows that the defendant, in fact, entertained serious doubts as to the truth of the publication. 125 Ill. 2d at 419.

The dissent in this case takes the position that the defendants here were not entitled to summary judgment because they failed to submit any evidence that would indicate that Dugan did *not* act with actual malice since the depositions of Dugan and Amy Mack, the newspaper reporter, shed no light on the issue of malice. The dissent maintains that, where a statement is determined to be defamatory *per se*, the determination of actual malice is a jury question, citing *Erickson v. Aetna Life & Casualty Co.* (1984), 127 Ill. App. 3d 753, 764.

■ If the language is libelous *per se*, malice is imputed from the words therein. (*Welch v. Chicago Tribune Co.* (1976), 34 Ill. App. 3d 1046, 1052.) In *Welch*, defendant terminated plaintiff's employment and circulated a memorandum stating that plaintiff, a sports writer, had been terminated because of "alcoholism, inefficiency, lack of punctuality, and unreliability." Plaintiff filed an action for libel alleging that the language of the memorandum was libelous *per se*, injuring him in his profession. In reversing the granting of summary judgment to the defendants, the reviewing court held that there were factual issues to be determined as to whether the memorandum was published maliciously and, therefore, the issue should have been submitted to the jury.

Contrary to the dissent's position, the question of actual malice, even in cases of libel *per se*, is not always a question for the jury and may, under the proper circumstances, be disposed of by a motion for summary judgment. See *Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, *aff'd* (1980), 83 Ill. 2d 146; *Danekas v. Wise* (1978), 64 Ill. App. 3d 801.

In *Danekas*, plaintiff, a former chief of police, sued the defendants alleging that an editorial which accused plaintiff of illegal and unprofessional conduct while in office was libelous *per se*. Plaintiff alleged that these charges were "false and known by the defendants to be false and defendants' publication thereof was with total and reckless disregard for the truth or falsity of any of said charges." (*Danekas*, 64 Ill. App. 3d at 802.) The trial court granted defendant's motion for summary judgment on the basis that there was no showing of actual malice.

In affirming the granting of summary judgment on the matter of actual malice, the reviewing court stated as follows:

"Stating it as succinctly as we can, the issue before us is whether the plaintiff has presented sufficient evidence to raise a triable issue as to whether or not the publication in question reflected actual malice, that is, whether it was knowingly false or made with reckless indifference as to whether or not it was false. In view of the depositions and affidavits offered in evidence by the defendants, which have not been controverted factually by the plaintiff, this threshold question must, we think, be answered in the negative.

As the trial judge remarked in his opinion sustaining the motion for summary judgment, '[t]he article published in the defendant's newspaper is not bland. It dispraises public officials very extensively.' There is no question but that the editorial was damaging to the plaintiff, but under the constitutional standards set by *New York Times v. Sullivan* [(1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.], the plaintiff must establish actual malice and this implies not only falsity, but knowing and reckless falsity. In this case the evidence submitted at the pleading stage indicates the opposite and clearly overcomes the general allegations in the complaint, standing by themselves. Thus, we think the plaintiff has failed to raise a triable issue as to the required element of actual malice. The corroborative details and the sources thereof supplied by the defendants' answers to the plaintiff's interrogatories, as supported by official documents and depositions of witnesses in a position to know the facts, indicate at the very least an absence of actual malice, within *New York Times* standards. Since this material was not controverted by any factual data offered by the plaintiff, no genuine issue was raised as to the material fact of actual malice." 64 Ill. App. 3d at 805.

The dissent points out that, in *Danakas*, summary judgment in fa-

vor of the defendant was not supported only by the self-serving assertion that the defendant believed the truth of his statement, but upon presentation of "official documents and depositions of witnesses in a position to know the facts." (64 Ill. App. 3d at 805.) Likewise, the dissent points out, in *Catalano*, the reviewing court expressed doubt as to whether a defendant's unqualified declaration that he believed in the truth of his statement would be sufficient to negate a showing of actual malice. (*Catalano*, 83 Ill. 2d at 167.) However, the record in this case reveals that Pease has not made a showing of actual malice other than the bare allegations hereafter set forth in the following paragraph. Dugan supported his motion for summary judgment with more than just a denial of Pease's allegation of actual malice.

In his third amended complaint, Pease alleged that Dugan "published said statements willingly and maliciously, knowing said statements were false." We note that Pease did not include the alternative allegation that Dugan made the complained-of statement with reckless disregard for its truth or falsity. Defendants supported their motion for summary judgment with excerpts from the depositions of Amy Mack and William Dugan. In his response to the motion for summary judgment, Pease relied on the allegations of his third amended complaint supported by a legal memorandum. The dissent correctly points out that, even though a party opposing a motion for summary judgment fails to file counteraffidavits, the movant is not entitled to summary judgment unless his motion and supporting affidavits establish his right to summary judgment as a matter of law. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636.) However, if the party moving for summary judgment supplies such facts, which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise a genuine issue of material fact. *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.

It is undisputed that the context in which Dugan's statement was made was in response to a charge by Pease that the union of which Dugan was president had engaged in acts of vandalism. The complained-of statement was a denial by Dugan of those charges. On his deposition, Dugan testified that he made an investigation of the matter after he made the complained-of statement and confirmed that Pease was lying as to the alleged acts of vandalism. He further testified that prior to making the complained-of statement he had no reason to conduct an investigation because he had never heard such charges before. Nothing about the statement or the context in which it was made as established by the depositions provides support for

Pease's allegation of actual malice. Had Dugan merely testified in his deposition that he believed in the truth of his statement, we would agree with the dissent that summary judgment would not be appropriate since Pease could still ultimately prevail on his defamation action. However, Dugan countered Pease's allegation, that he called Pease a liar knowing that was not true, not only by denying the allegation but also by furnishing the additional facts that he had never heard Pease's charges of vandalism by the union before, thus, giving him no reason to believe such charges, and that a subsequent investigation proved that Pease's charges were, in fact, false. In light of the fact that Pease did not allege that Dugan made the complained-of statement with reckless disregard for its truth or falsity, the fact that Dugan's investigation occurred after he made the complained-of statement does not require a different result. Pease failed to allege any facts which showed that at the time Dugan made the complained-of statement, Dugan had reason to doubt its truth.

■■ ■ The burden of proving malice is on the party claiming injury. (*Welch*, 34 Ill. App. 3d at 1052.) In order to defeat the motion for summary judgment, Pease was required to present sufficient admissible evidence to establish that a genuine issue of material fact existed as to the existence of actual malice on the part of Dugan and International. Pease has not further supported his position with evidentiary facts showing that Dugan knew that Pease was telling the truth about the vandalism when he made the complained-of statement or that Dugan entertained serious doubts that Pease was not telling the truth. Therefore, Pease has not established a genuine issue of material fact as to whether Dugan acted with actual malice. (See *Carruthers*, 57 Ill. 2d at 380.) Summary judgment as to counts I and II was, therefore, properly granted to Dugan and International.

### MALICIOUS PROSECUTION

Pease contends that the trial court erred in dismissing his claims for malicious prosecution against Magdic, Strong, and International. Pease's claim for malicious prosecution alleged in pertinent part as follows:

"4. On or about August 19, 1987, MAGDIC willfully and maliciously directed and procured the arrest of PEASE by Lake County Sheriff's Police by falsely and wrongfully accusing him of a criminal offense.

5. Thereafter MAGDIC wilfully and maliciously proceeded with the prosecution of criminal charges against PEASE without probable cause to do so.

6. The criminal prosecutions against PEASE were terminated in PEASE'S favor.

7. As a direct and proximate result of the prosecution, PEASE suffered damages."

Identical allegations were directed at International and Strong, as well.

In dismissing the malicious prosecution counts, the trial court stated in pertinent part as follows:

"The court finds that on August 19, 1987, the Nineteenth Judicial Circuit Court Judge Henry Tonigan found probable cause to arrest Jack Pease and issued a warrant for that purpose. Absence of probable cause to arrest is an essential element of the claim of malicious prosecution, and therefore, the previous finding of probable cause bars this claim."

Defendants' motion to dismiss did not state whether it was brought pursuant to section 2—615 or section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619). The basis for the motion appears to be insufficient pleadings resulting in a failure to state a cause of action pursuant to section 2—615. However, the basis stated in the order of dismissal was the absence of probable cause based upon the issuance of a judicial warrant which the trial court here held barred the claim for malicious prosecution, and thus it would be considered a disposition under section 2—619 (cause of action barred by affirmative matter).

■■■ ■ We are of the opinion that the trial court erred in dismissing the malicious prosecution counts of Pease's third amended complaint. Even if the court in the criminal proceedings had found probable cause to bind a defendant over for trial, which is similar to a finding of probable cause to arrest, such a finding would be at most only *evidence* of probable cause and would not be conclusive on this issue in subsequent civil proceedings. (*Lyons v. Kanter* (1918), 285 Ill. 336, 341.) The fact that the judge in the prior criminal proceedings here found probable cause to arrest likewise does not foreclose further inquiry on this question in the instant civil proceedings, so dismissal of the malicious prosecution counts of the third amended complaint was improper.

■■■ Defendants argue that in his deposition Pease conceded that probable cause to arrest him existed. On an appeal from an order dismissing an action pursuant to section 2—615, this court, like the trial court, may consider only allegations contained in the complaint. (*Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 173.) A motion to dismiss brought under section 2—619 does not appear to be

under similar constraints since such motions are often required to be supported by affidavit if the ground for the motion does not appear on the face of the complaint. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) When a complaint has been dismissed, the dismissal will be upheld upon any basis found in the record, and the reviewing court will presume it was upon one of the grounds properly presented. (*Outlaw v. O'Leary* (1987), 161 Ill. App. 3d 218, 221.) The defendants here did not argue to the trial court that Pease had conceded the issue of probable cause and, therefore, that basis for dismissing the malicious prosecution counts of the complaint was not properly presented to the trial court.

■■■ Defendants also argue that dismissal of these counts was appropriate in any event because Pease's pleadings were insufficient to state the cause of action for malicious prosecution. However, the alleged insufficiency of plaintiff's allegations was not the basis of the trial court's order dismissing these counts with prejudice. Although a reviewing court may affirm a judgment on any basis appearing on the record, it would be inappropriate to invoke this rule and affirm the dismissal of a complaint with prejudice on the alternative basis of a pleading defect. *Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527, 533.

We conclude, therefore, that the trial court erred in dismissing the malicious prosecution counts of Pease's third amended complaint.

Accordingly, the judgment of the circuit court granting partial summary judgment to Magdic, Strong, and International as to counts V, VI, IX and X (false imprisonment) and granting partial summary judgment to Dugan and International as to counts I and II (defamation based on the newspaper article) is affirmed. The circuit court's order granting the motion to dismiss counts XIII through XVI (malicious prosecution) is reversed, and this cause is remanded for further proceedings consistent with the views expressed in this opinion.

Affirmed in part; reversed in part and remanded.

DUNN, J., concurs.

JUSTICE REINHARD, concurring in part and dissenting in part:

I agree with the majority's opinion insofar as it holds that the trial court correctly entered summary judgment in favor of defendants on counts V, VI, IX and X of the third amended complaint seeking recovery based on false imprisonment. I further agree with the majority that the trial court erred in dismissing counts XIII through

XVI of the third amended complaint which sought recovery for malicious prosecution.

I disagree, however, with the majority's determination that defendants were entitled to summary judgment on counts I and II of the third amended complaint based on defamation. It is important to note the narrow scope of our inquiry in this regard. In its ruling on defendants' motion for partial summary judgment on counts I and II, the trial court found that the statements made by defendant Dugan constituted defamation which was actionable *per se*. No party on appeal has taken issue with this determination. Therefore, unlike that of the majority, my analysis is undertaken assuming, but not deciding, that the statements at issue constitute defamation which is actionable *per se*.

In their motion for partial summary judgment on counts I and II, defendants argued that the statements at issue arose in the context of a labor dispute and that, therefore, this case falls within the ambit of *Linn v. United Plant Guard Workers of America* (1966), 383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657. The record reveals that plaintiff conceded that the events in question occurred during the same time period as a union organizing campaign, so I agree with the majority that *Linn* is applicable here.

*Linn* addressed the question of whether an action for defamation under State law is preempted by Federal labor law if the action arises in the context of a labor dispute. The Supreme Court held that such actions were not preempted so long as the plaintiff could also demonstrate actual malice on the part of the defendant according to the test enunciated in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. (*Linn*, 383 U.S. at 65, 15 L. Ed. 2d at 591, 86 S. Ct. at 664.) The court also held that plaintiffs in such actions must offer some proof of the harm suffered as a result of the defamation and may not rely on a presumption of harm recognized by State law. The court stated that plaintiffs "may not recover except upon proof of such harm, which may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law." *Linn*, 383 U.S. at 65, 15 L. Ed. 2d at 591, 86 S. Ct. at 664.

The majority concludes that summary judgment on counts I and II was appropriate because plaintiff failed to present an issue of material fact regarding the question of whether Dugan acted with actual malice. However, defendants did not submit any evidence along with their motion for partial summary judgment which would establish that

Dugan did *not* act with actual malice.

The majority notes that "[d]efendants supported their motion for summary judgment with excerpts from the depositions of Amy Mack and William Dugan." (208 Ill. App. 3d at 874.) The majority does not explain how the deposition of Mack, the newspaper reporter, shows a lack of actual malice on the part of Dugan. Mack's deposition merely shows that Dugan made the statement at issue. Because malice may be proved by the defamatory statement itself, Mack's deposition actually supports plaintiff's position that a question of fact on the issue of actual malice remained which should not have been disposed of by summary judgment. See *Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 1052-53.

Moreover, the majority ascribes far too much weight to Dugan's self-serving affidavit claiming that he believed in the truth of his statement that plaintiff "lies a lot." Even where the party opposing a motion for summary judgment fails to file counteraffidavits, the movant is not entitled to summary judgment unless his motion and supporting affidavits establish his right to summary judgment as a matter of law. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636.) A defendant will not necessarily defeat a finding of actual malice merely "by testifying that he published with a belief that the statements were true." (*St. Amant v. Thompson* (1968), 390 U.S. 727, 732, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323, 1326.) Therefore, because plaintiff could ultimately succeed in a defamation action despite Dugan's assertion that he believed in the truth of his statement, the affidavit does not establish Dugan's right to summary judgment in his favor as a matter of law even though it is uncontroverted.

Although the majority correctly notes that the existence of actual malice "may, under the proper circumstances, be disposed of by a motion for summary judgment," the majority fails to show that the proper circumstances for such a summary disposition exist in *this* case. It remains true that the question of actual malice is generally one for the trier of fact. (*Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 810, aff'd (1980), 83 Ill. 2d 146; see also *Erickson v. Aetna Life & Casualty Co.* (1984), 127 Ill. App. 3d 753, 764 (where a statement is determined to be defamatory *per se*, the determination of malice is a jury question).) I believe that the self-serving statements in Dugan's affidavit are not sufficient to require plaintiff to have filed counteraffidavits in order to defeat the motion for summary judgment.

The cases cited by the majority do not support a contrary conclusion. The entry of summary judgment in favor of the defendant in *Danekas v. Wise* (1978), 64 Ill. App. 3d 801, was not, as here, sup-

ported only by a self-serving assertion that the defendant believed the truth of his statement, but upon presentation of "official documents and depositions of witnesses in a position to know the facts." (64 Ill. App. 3d at 805.) Similarly, the supreme court in *Catalano v. Pechous* (1980), 83 Ill. 2d 146, expressed doubt as to whether a defendant's unqualified declaration that he believed in the truth of his statement would be sufficient to negate a showing of actual malice. (83 Ill. 2d at 167.) Thus, *Catalano* contradicts, rather than supports, the majority's position.

Defendants also argue that plaintiff failed to present a factual question as to whether he sustained damages from the alleged defamation as required by *Linn*. Defendants correctly note that plaintiff made it clear below that he was not pursuing a claim based on special damages. However, *Linn* does not require a plaintiff to seek special damages in order to escape Federal preemption; recovery can be based on proof of "general injury to reputation" if such harm is recognized as compensable under State law. (*Linn*, 383 U.S. at 65, 15 L. Ed. 2d at 591, 86 S. Ct. at 664.) Generally, Illinois allows recovery for general damages stemming from injury to reputation. (*Brown v. Farkas* (1986), 158 Ill. App. 3d 772, 777.) In Illinois, such damages generally arise by inference of law and need not be proved by evidence. *Brown*, 158 Ill. App. 3d at 777; see also *Mittelman v. Witous* (1989), 135 Ill. 2d 220, 238-39.

In the instant case, State law would allow plaintiff to recover damages based on general injury to his reputation. Although such damages would normally be presumed under Illinois law, where, as here, the suit arises in the context of a labor dispute, *Linn* requires plaintiff to offer "evidence as to the severity" of the harm (*i.e.*, injury to reputation) in order to escape Federal preemption. (*Linn*, 383 U.S. at 65, 15 L. Ed. 2d at 591, 86 S. Ct. at 664.) This does not mean that plaintiff is required to prove special or actual damages measured by some pecuniary loss.

Contrary to defendants' assertions, there is nothing in the record to suggest that plaintiff conceded he could not prove his allegation that the alleged defamation caused injury to plaintiff's "reputation for honesty and integrity in his personal and business affairs." Moreover, defendants offered no evidence by affidavit or deposition in support of their motion for summary judgment which would negate this allegation. Accordingly, an issue of fact remained, and there was no basis for the entry of summary judgment. Plaintiff is entitled to the opportunity to present evidence regarding the alleged injury to his reputation.

Accordingly, while I would affirm the trial court's entry of summary judgment in favor of defendants on the false imprisonment counts of the third amended complaint, I would reverse the order granting summary judgment on the defamation counts and dismissing those counts of the complaint alleging malicious prosecution.